# In the United States Court of Appeals
# For the District of Columbia Circuit

Public.Resource.Org, Inc. P.O. Box 800 Healdsburg, CA 95448,

iFixit, Inc. 1330 Monterey St San Luis Obispo, CA 93401, and

Make Community, LLC 150 Todd Road, Suite 100 Santa Rosa, CA 95407,

*Petitioners,*

v.

Federal Communications Commission and the United States of America,

*Respondents.*

## PETITION TO REVIEW

Petitioners Public.Resource.Org, Inc., iFixit, Inc., and Make Community, LLC, seek review of the final order of respondent Federal Communications Commission (FCC) published in the Federal Register on September 29, 2023, at 88 Fed. Reg 67108-16 (attached). Respondent FCC's final order is reviewable in this Court pursuant to 47 U.S.C. § 402(a). This Court has jurisdiction under 28 U.S.C. § 2342(1).

Pursuant to 28 U.S.C. § 2344, petitioners provide the following information:

(1) The proceeding below was a rulemaking in which the respondent Federal Communications Commission amended its rules to incorporate

1

four new and updated standards that are integral to the testing of equipment that is subject to respondent's jurisdiction.

(2) Venue in this Court is expressly authorized by 28 U.S.C. § 2343.

(3) Pursuant to 5 U.S.C. § 553, all agencies are required to provide the public with notice and a meaningful opportunity to present their views on all proposed substantive rules such as these. Respondent FCC did not publish these proposed rules in the Federal Register, and they were not otherwise reasonably available for use in commenting on them. In addition, 5 U.S.C. § 552(a)(1)(D) requires respondent FCC to publish the text of final rules such as these in the Federal Register, but it has not done so, nor has it otherwise made them reasonably available, such as by posting them on its website.

(4) For the reasons set forth in (3) above, respondent FCC failed to comply with 5 U.S.C. § 553 and 5 U.S.C. § 552(a)(1)(D), and therefore the order under review and the rules approved by it are unlawful.

(5) Petitioners do not ask the Court to vacate these rules, but to remand the proceeding to respondent FCC with directions that respondent FCC (a) issue a new notice of proposed rulemaking with respect to these rules and, at the same time, make the proposed rules reasonably available to petitioners and other members of the public so that they may comment on

2

them, and (b) publish any final rules either in the Federal Register or on its website.

*Alan B. Morrison*
Alan B. Morrison
George Washington University
　Law School
2000 H Street NW
Washington D.C. 20052
(202) 994 7120
abmorrison@law.gwu.edu

David Halperin
1805 9th St NW
Washington, DC 20001
(202) 905-3434
davidhalperindc@gmail.com

Counsel for Petitioners

November 8, 2023

USCA Case #23-1311  Document #2025984  Filed: 11/08/2023  Page 4 of 12

(b) * * *

(6) Notwithstanding any other provision of this part, the effectiveness of paragraph (b)(3) of this section is stayed with regard to emissions occurring in 2023 and thereafter, provided that while such stay remains in effect, the provisions of paragraph (b)(2) of this section shall apply with regard to such emissions.

(c) * * *

(2) Notwithstanding any other provision of this part, the effectiveness of paragraph (c)(1) of this section is stayed.

## PART 97—FEDERAL NO$_X$ BUDGET TRADING PROGRAM, CAIR NO$_X$ AND SO$_2$ TRADING PROGRAMS, CSAPR NO$_X$ AND SO$_2$ TRADING PROGRAMS, AND TEXAS SO$_2$ TRADING PROGRAM

■ 10. The authority citation for part 97 continues to read as follows:

**Authority:** 42 U.S.C. 7401, 7403, 7410, 7426, 7491, 7601, and 7651, *et seq.*

### Subpart EEEEE—CSAPR NO$_X$ Ozone Season Group 2 Trading Program

■ 11. Amend § 97.810 by:
■ a. Revising paragraphs (a)(1)(i) through (iii) and (a)(17)(i) through (iii);
■ b. Adding paragraphs (a)(22)(iv) through (vi);
■ c. Revising paragraphs (b)(1) and (17); and
■ d. Redesignating paragraph (b)(22) as paragraph (b)(22)(i) and adding paragraph (b)(22)(ii).

The revisions and additions read as follows:

### § 97.810 State NO$_X$ Ozone Season Group 2 trading budgets, new unit set-asides, Indian country new unit set-asides, and variability limits.

(a) * * *
(1) * * *
(i) The NO$_X$ Ozone Season Group 2 trading budget for 2017 and thereafter is 13,211 tons.
(ii) The new unit set-aside for 2017 and thereafter is 255 tons.
(iii) The Indian country new unit set-aside for 2017 and thereafter is 13 tons.
* * * * *
(17) * * *
(i) The NO$_X$ Ozone Season Group 2 trading budget for 2017 and thereafter is 11,641 tons.
(ii) The new unit set-aside for 2017 and thereafter is 221 tons.
(iii) The Indian country new unit set-aside for 2017 and thereafter is 12 tons.
* * * * *
(22) * * *
(iv) The NO$_X$ Ozone Season Group 2 trading budget for 2023 and thereafter is 12,884 tons.

(v) The new unit set-aside for 2023 and thereafter is 261 tons.
(vi) [Reserved]
* * * * *
(b) * * *
(1) The variability limit for Alabama for 2017 and thereafter is 2,774 tons.
* * * * *
(17) The variability limit for Oklahoma for 2017 and thereafter is 2,445 tons.
* * * * *
(22) * * *
(ii) The variability limit for West Virginia for 2023 and thereafter is 2,706 tons.
* * * * *

### § 97.821 [Amended]

■ 12. Amend § 97.821 in paragraph (e)(2) by removing "By September 5, 2023, the Administrator" and adding in its place "By September 5, 2023, or, with regard to sources in West Virginia, as soon as practicable on or after September 29, 2023, the Administrator".

### § 97.824 [Amended]

■ 13. Amend § 97.824 in paragraph (a)(2) by removing the period at the end of the paragraph and adding a semicolon in its place.

### § 97.825 [Amended]

■ 14. Amend § 97.825 in paragraph (a)(2) by removing the period at the end of the paragraph and adding a semicolon in its place.

### § 97.826 [Amended]

■ 15. Amend § 97.826 in paragraph (e)(1) introductory text by removing "§ 52.38(b)(2)(ii)(A) or (D)" and adding in its place "§ 52.38(b)(2)(ii)(A) or (b)(2)(iii)(D)".

### Subpart GGGGG—CSAPR NO$_X$ Ozone Season Group 3 Trading Program

### § 97.1026 [Amended]

■ 16. Amend § 97.1026:
■ a. In paragraph (d)(2)(ii) introductory text, by removing "§ 52.38(b)(2)(iii)" and adding in its place "§ 52.38(b)(2)(iii)(A) through (C)"; and
■ b. In paragraph (e) introductory text, by removing "by September 18, 2023, the Administrator" and adding in its place "by September 18, 2023, or, with regard to sources in West Virginia, as soon as practicable on or after September 29, 2023, the Administrator".

[FR Doc. 2023–21040 Filed 9–28–23; 8:45 am]
**BILLING CODE 6560–50–P**

# FEDERAL COMMUNICATIONS COMMISSION

## 47 CFR Parts 2, 15, 68, and 73

[ET Docket No. 21–363; FCC 23–14; FR ID 172974]

## Updating References to Standards Related to the Commission's Equipment Authorization Program

**AGENCY:** Federal Communications Commission.
**ACTION:** Final rule.

**SUMMARY:** In this document, the Federal Communications Commission (Commission) updates the rules to incorporate four new and updated standards that are integral to equipment testing. By updating the Commission's rules to keep pace with significant developments in the standards-setting community, the Commission ensures that the equipment authorization program relies on the latest guidance so that the public has confidence that today's advanced devices comply with its technical rules.

**DATES:** This regulation is effective October 30, 2023. The incorporation by reference of certain publications listed in the rule is approved by the Director of the Federal Register as of October 30, 2023.

**FOR FURTHER INFORMATION CONTACT:** Jamie Coleman, Office of Engineering and Technology, (202) 418–2705 or *Jamie.Coleman@FCC.gov.*

**SUPPLEMENTARY INFORMATION:** This is a summary of the Commission's Report and Order, in ET Docket No. 21–363; FCC 23–14, adopted on March 10, 2023, and released on March 14, 2023. The full text of this document is available for public inspection and can be downloaded at: *https://docs.fcc.gov/public/attachments/FCC-23-14A1.pdf.* Alternative formats are available for people with disabilities (Braille, large print, electronic files, audio format) by sending an email to *FCC504@fcc.gov* or calling the Commission's Consumer and Governmental Affairs Bureau at (202) 418–0530 (voice), (202) 418–0432 (TTY).

### Procedural Matters

*Final Regulatory Flexibility Analyses.* The Regulatory Flexibility Act of 1980 (RFA) requires that an agency prepare a regulatory flexibility analysis for notice and comment rulemakings, unless the agency certifies that "the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." Accordingly, the Commission has prepared a Final

Regulatory Flexibility Analysis (FRFA) concerning the possible impact of the rule changes and/or policy contained in the Report and Order on small entities. As required by the RFA, an Initial Regulatory Flexibility Analysis (IRFA) was incorporated in the Notice of Proposed Rulemaking (NPRM), 87 FR 151189 (March 17, 2022). The Commission sought written public comment on the proposals in the NPRM, including comments on the IRFA. No comments were filed addressing the IRFA. Accordingly, the Commission has prepared a Final Regulatory Flexibility Analysis (FRFA) concerning the possible impact of the rule changes contained in the document on small entities. The present FRFA conforms to the RFA and can be viewed under Appendix B of the item.

*Paperwork Reduction Act.* This document does not contain information collection requirements subject to the Paperwork Reduction Act of 1995 (PRA), Public Law 104–13. In addition, therefore, it does not contain any new or modified information collection burden for small business concerns with fewer than 25 employees, pursuant to the Small Business Paperwork Relief Act of 2002, Public Law 107–198, see 44 U.S.C. 3506(c)(4). The Commission has described impacts that might affect small businesses, which includes most businesses with fewer than 25 employees, in the Final Regulatory Flexibility Analysis (FRFA), and can be viewed under Appendix B of the item at: *https://www.fcc.gov/document/fcc-updates-equipment-authorization-standards.*

*Congressional Review Act.* The Commission has determined, and the Administrator of the Office of Information and Regulatory Affairs, Office of Management and Budget, concurs, that this rule is "non-major" under the Congressional Review Act, 5 U.S.C. 804(2). The Commission will send a copy of this document to Congress and the Government Accountability Office pursuant to 5 U.S.C. 801(a)(1)(A).

## Synopsis

### Background

Section 302 of the Communications Act of 1934, as amended (the Act), authorizes the Commission to make reasonable regulations governing the interference potential of devices that emit RF energy and can cause harmful interference to radio communications. The Commission generally implements this authority by establishing technical rules for RF devices. One of the primary ways the Commission ensures compliance with the technical rules is through the equipment authorization program for RF devices, procedures for which are codified in part 2 of its rules. The Office of Engineering and Technology (OET) administers the day-to-day operation of the equipment authorization program.

Part 2 of the Commission's rules provides two different approval procedures for RF devices subject to equipment authorization—certification and Supplier's Declaration of Conformity (SDoC). While both processes involve laboratory testing to demonstrate compliance with Commission requirements, testing associated with certification must be performed by an FCC-recognized accredited testing laboratory. Additionally, part 68 of the Commission's rules sets forth requirements to ensure that terminal equipment can be connected to the telephone network without harming its functioning and for the compatibility of hearing aids and land-line telephones so as to ensure that, to the fullest extent made possible by technology and medical science, people with hearing loss have equal access to communications services.

Equipment testing is central to the equipment authorization program in ensuring that RF devices comply with Commission rules. Acknowledging the best practices widely followed by industry, the Commission's equipment authorization rules often incorporate by reference various standards established by standards-setting bodies, including, but not limited to, the American National Standards Institute (ANSI), Accredited Standards Committee C63 (ANSC C63); the International Organization for Standardization; and the International Electrotechnical Commission. Use of these standards is intended to ensure the integrity of the measurement data associated with an equipment authorization. Among other things, such standards provide procedures for conducting measurements at testing facilities and specify the conditions expected in the testing environment.

### Discussion

Standards bodies periodically update existing standards or adopt new standards to reflect best practices in response to advancements in technologies and measurement capabilities. The Commission initiated this proceeding in response to such developments. Specifically, in the NPRM, the Commission addressed two petitions filed by ANSC C63: one seeking to incorporate by reference into its rules a new standard pertaining to test site validation; and one proposing to incorporate by reference a newer version of a currently referenced standard that addresses a variety of compliance testing requirements. The Commission also proposed to clarify the status of two standards on which OET previously sought comment.

### *Incorporation by Reference*

Incorporation by reference (IBR) is the process that federal agencies use when referring to materials published elsewhere to give those materials the same force and effect of law in the Code of Federal Regulations (CFR) as if the materials' text had actually been published in the **Federal Register**. By using IBR, the Commission is able to give effect to technical instructions, testing methodologies, and other process documents that are developed and owned by standards development organizations. Referencing these documents in the Commission's rules in accordance with requirements established by the Office of the Federal Register substantially reduces the volume of material that the Commission otherwise would have to publish in the **Federal Register** and the CFR. Once the Commission has completed any necessary notice-and-comment rulemaking proceedings and determined based on the record that any standards the Commission adopts is sound and appropriate, the Commission need only update the references to the standards in the Commission's rules.

### Availability of Materials

As an initial matter, the Commission addresses a comment regarding the IBR process in general as opposed to the merits of the particular standards under consideration. Specifically, Public Resource Org. Inc., iFixit, Inc., and Make Community, LLC (Joint Commenters) express concerns related to "the public availability and accessibility of documents that are proposed to be incorporated by reference into law." Joint Commenters claim that the materials subject to IBR should be broadly available to members of the public on a free and unrestricted basis (*e.g.*, in a format that can be easily copied without cost), that the standards documents were not made available in this manner during the rulemaking process, and that the Commission's failure to do so was "illegal and arbitrary." Joint Commenters are concerned that the accessibility of the relevant materials is often limited by what it characterizes as onerous conditions put in place by the associated private entities. It asks that

USCA Case #23-1311   Document #2025984   Filed: 11/08/2023   Page 6 of 12

the Commission "restart" the rulemaking process with "everyone having free access and the right to copy" the standards under consideration.

The Commission recognizes that the benefit of using the IBR process to incorporate standards that are developed and hosted by professional standards development organizations into the rules—that the Commission can "draw on the expertise and resources of private sector standard developers to serve the public interest"—is typically accompanied with limitations on how those standards are accessed due to the standard developers' intellectual property interests in those materials. For example, the National Archives and Records Administration, Office of the Federal Register (NARA OFR), in its final rule addressing incorporation by reference, concluded that a requirement to make available, for free, all materials incorporated by reference into the CFR would "compromise the ability of regulators to rely on voluntary consensus standards, possibly requiring them to create their own standards, which is contrary to the [National Technology Transfer and Advancement Act of 1995] and the OMB Circular A-119." The Commission therefore disagrees with the sweeping nature of Joint Commenters' claims. The requirements for availability as suggested by Joint Commenters would be inconsistent with established government-wide guidance and practice for IBR and would potentially burden test laboratories, manufacturers, and consumers if the Commission were unable to recognize state-of-the-art technical standards adopted and frequently updated through the consensus-driven standards development process.

The Commission further concludes that the information the Commission provided about the standards it proposed to adopt, including the means by which individuals could inspect copies of those standards, was sufficient to satisfy the requirements for incorporation by reference as set forth in the Administrative Procedure Act (APA) and implemented by NARA OFR in that the Commission made the information reasonably available to the class of persons affected thereby. In the summary of the NPRM published in the **Federal Register**, the Commission provided sources through which interested persons could obtain copies of the relevant standards and stated that a copy of each standard was available for inspection at the FCC's main office. Each of the relevant standards has remained available throughout the rulemaking proceeding in the manner described in the NPRM. In addition, Commission staff further acted consistent with guidance from the Administrative Conference of the United States (ACUS) to "take steps to promote the availability of incorporated materials within the framework of existing law" by communicating with the relevant standards bodies to encourage availability of materials in an online read-only format and, prior to publication of the NPRM in the **Federal Register**, confirmed that each standard was available for purchase by any interested party.

In addressing the proposed rulemaking, Joint Commenters specifically address the terms by which interested parties may purchase copies of the standards. As an initial matter, the Commission notes there is nothing unusual about a direct purchase option being available as part of the IBR process. However, the Commission disagrees with the Joint Commenters' assertion that "[i]n order to comment on [the NPRM], [the Joint Commenters] would have to each expend $589" by purchasing copies of the standards. Direct purchase was only one of the means of obtaining information about the standards under consideration. In this case, at least two of these standards were available online in a read-only format without cost, abstracts and information related to the standards are widely available without restriction, and the Commission, per its longstanding practice, ensured that the materials were available for in-person inspection. The Commission is not aware of any party that actually desired to inspect the materials but was unable to do so because of difficulties in traveling to the specified inspection site. Moreover, none of the comments filed in the proceeding that were related to the technical merits of the proposed standards incorporations identified any impediments to finding and accessing the standards under consideration. Based on these facts, and the established policy, the Commission concludes that the materials proposed to be incorporated by reference have been made reasonably available to the class of person affected, consistent with 5 U.S.C. 552(a) and the requirements and procedures under 1 CFR part 51. The Commission therefore disagrees with Joint Commenters' assertion that parties could not "see" or "have access to the text of the standards" such that they could not meaningfully participate in the rulemaking process.

The Commission is also confident that interested parties will have sufficient opportunities to access the standards on an ongoing basis once the Commission has incorporated them into its rules. The FCC will make a copy of the standards available for public inspection upon request, and NARA OFR makes legal record copies of all standards that have been incorporated by reference. In addition to continued opportunities to purchase copies through the standards development organizations and other online sources, the Commission anticipates that all of the standards, once adopted, will be made available to the public through the on-line reading rooms that the standards bodies maintain. For example, ANSI maintains an "Incorporated by Reference Portal" at *www.ibr.ansi.org* that it describes as "a one-stop mechanism for access to standards that have been incorporated by reference in the U.S. Code of Federal Regulations (CFR)," and which provides access to these documents at no cost in "read only" format for online reading. Collectively, these resources are more than sufficient to permit interested parties to accomplish the objectives identified by the Joint Commenters, including use of the standards by people who fix and evaluate equipment and make new things for understanding how the devices work and identifying whether they are working properly. While the Commission recognizes that each of these access mechanisms may have individual limitations (*e.g.*, cost, travel for in-person inspection, limitations on how the materials may be downloaded, shared, or otherwise used) that would not exist if the standards were made available "on a public website without charge, and without limitation of use" as the Joint Commenters request, none of these limitations would prevent interested parties from accessing and using the standards the Commission is adopting. For these reasons, the Commission explicitly rejects the Joint Commenters' assertion that the Commission's actions will be inconsistent with established law and policy balancing the public interest in promoting the development of and reliance on voluntary standards against the need for public access to any such standards incorporated by reference by federal agencies.

Accessing Materials

The OFR has regulations concerning incorporation by reference. These regulations require that, for a final rule, agencies must discuss in the preamble to the final rule the way in which materials that the agency incorporates by reference are reasonably available to interested parties, and how interested parties can obtain the materials.

Additionally, the preamble to the final rule must summarize the material.

Sections 2.910 and 2.948 of the rules adopted in the Report and Order incorporate by reference the following standard: "American National Standard Validation Methods for Radiated Emission Test Sites; 1 GHz to 18 GHz" (ANSI C63.25.1–2018). The ANSI C63.25.1–2018 standard consolidates guidance from existing standards to provide test site validation procedures from 1 GHz to 18 GHz. Incorporation of this standard will provide an additional option for test site validation of radiated emission measurements from 1 GHz to 18 GHz, while continuing to provide for the validation option currently specified in the Commission's rules. Interested persons may purchase a copy of ANSI C63.25.1 from the sources provided in 47 CFR 2.910. A copy of the standard may also be inspected at the FCC's main office.

Sections 15.31 and 15.38 of the rules adopted in the Report and Order incorporate by reference the following standard: "American National Standard of Procedures for Compliance Testing of Unlicensed Wireless Devices" (ANSI C63.10–2020). The ANSI C63.10–2020 standard is an update to a standard previously incorporated by reference within the Commission's rules and it addresses "the procedures for testing the compliance of a wide variety of unlicensed wireless transmitters." Interested persons may purchase a copy of ANSI C63.10–2020 from the sources provided in 47 CFR 2.910. A copy of the standard may also be inspected at the FCC's main office.

Sections 2.910, 2.948, 2.949, 2.962, and 68.162 of the rules adopted in the Report and Order incorporate by reference the following standard: "General requirements for the competence of testing and calibration laboratories" (ISO/IEC 17025:2017(E)). The ISO/IEC 17025:2017(E) standard is an update to the standard currently incorporated by reference within the Commission's rules that replaces certain prescriptive requirements with performance-based requirements for test laboratory accreditation. The standard contains the requirements related to test laboratory accreditation, including requirements for processes, procedures, documented information, and organizational responsibilities. The laboratory accreditation bodies assess a variety of laboratory aspects, including the technical competence of staff; the validity and appropriateness of test methods; traceability of measurements and calibration to national standards; suitability, calibration, and maintenance of the testing environment; sampling, handling, and transportation of test items; and quality assurance of test and calibration data. Interested persons may purchase a copy of ISO/IEC 17025:2017(E) from the sources provided in 47 CFR 2.910 and 68.162. A copy of the standard may also be inspected at the FCC's main office.

Sections 2.910 and 2.948 of the rules adopted in the Report and Order incorporate by reference the following standard: "American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz, Amendment 1: Test Site Validation" (ANSI C63.4a–2017). The ANSI C63.4a–2017 standard introduces modifications to the normalized site attenuation procedures for validating radiated test sites for use in the 30 MHz to 1 GHz frequency range. Interested persons may purchase a copy of ANSI C63.4a–2017 from the sources provided in 47 CFR 2.910. A copy of the standard may also be inspected at the FCC's main office.

"American National Standard Validation Methods for Radiated Emission Test Sites; 1 GHz to 18 GHz" (ANSI C63.25.1–2018)

In consideration of an ANSC C63 petition for rulemaking, in the NPRM, the Commission proposed to incorporate by reference the standard titled "American National Standard Validation Methods for Radiated Emission Test Sites; 1 GHz to 18 GHz" (ANSI C63.25.1–2018), into the test site validation requirements of § 2.948(d) of the Commission's rules. Under the Commission's current rules, measurement facilities that make radiated emission measurements from 30 MHz to 1 GHz must comply with the site validation requirements in ANSI C63.4–2014 (clause 5.4.4), and, for radiated emission measurements from 1 GHz to 40 GHz, the site validation requirements in ANSI C63.4–2014 (clause 5.5.1 a) 1)) apply. The Commission proposed to incorporate ANSI C63.25.1–2018 in order to provide an additional option for test site validation of radiated emission measurements from 1 GHz to 18 GHz.

As noted in the NPRM, the C63.25.1–2018 standard consolidates guidance from existing standards to provide test site validation procedures from 1 GHz to 18 GHz. For example, the C63.25.1–2018 standard includes a CISPR 16 method known as the site voltage standing wave ratio (SVSWR) approach to validate test sites for frequencies above 1 GHz, which measures responses between antennas while varying their distances. This method is included in the standard currently referenced in the Commission's rules, ANSI C63.4–2014 (clause 5.5.1 a) 1)). Additionally, C63.25.1–2018 introduces the option of using a new effective test validation method called time domain site validation (TDSV), the benefits of which are cited by ANSC C63 in the C63.25.1 Petition. The Commission tentatively concluded that incorporating C63.25.1–2018 in the Commission's rules by reference would have the benefit of providing the availability of TDSV as an additional option, while continuing to allow use of the procedures currently described in § 2.948(d) of the Commission's rules for test site validation of radiated emission measurements from 1 GHz to 18 GHz. While the Commission tentatively concluded that the entire standard should be incorporated by reference, it also asked whether any procedures or techniques included in ANSI C63.25.1–2018 would not be appropriate for demonstrating compliance with the Commission's equipment authorization rules. Finally, because the Commission proposed to incorporate ANSI C63.25.1–2018 as an option to an already existing requirement, it tentatively concluded that there would be no need to designate a transition period.

Several commenters expressed support for adopting ANSI C63.25.1–2018 in full. Information Technology Industry Council, while suggesting that C63.25.1–2018 be applied immediately, also suggests that the Commission continue to accept measurements that reference C63.4–2014 for two years. Cisco Systems Inc. (Cisco) supports adopting the proposed references to ANSI C63.25.1–2018; however, it asks the Commission to make some specific clarifications regarding the application of the standard. Specifically, Cisco encourages the Commission to clarify that site voltage standing wave ratio (SVSWR) and time domain site validation (TDSV) are the only acceptable methods of site verification under ANSI C63.25.1–2018. Additionally, Cisco states that as both the SVSWR and TDSV validation methods require some calibration, ANSI C63.5–2017 does not appear to add any value as a reference. Thus, Cisco suggests that the FCC simply state that all appropriate devices (antennas, positioners, etc.) must be validated in a manner that ensures they satisfy the necessary characteristics defined by each method.

The Commission believes, and the record does not suggest otherwise, that the Commission was correct to tentatively conclude that incorporating ANSI C63.25.1–2018 among the

USCA Case #23-1311    Document #2025984    Filed: 11/08/2023    Page 8 of 12

procedures currently described in § 2.948(d) of the Commission's rules would serve the public interest by providing useful options and potential benefits for test site validation of radiated emission measurements from 1 GHz to 18 GHz. As the Commission noted when discussing the C63.25.1 Petition, while the TDSV and SVSWR methods are similar in that both measure responses between antennas, TDSV does not require varying the distance between antennas, providing a reduction in the sensitivity of test results caused by small test setup changes at higher frequencies where the associated wavelengths are relatively short. This feature and other aspects of the TDSV method introduce process efficiency improvements that could result in less time to perform the validation. Accordingly, the Commission is incorporating the complete ANSI C63.25.1–2018 standard into § 2.948(d) of the rules. The Commission clarifies that incorporating ANSI C63.25.1–2018 into § 2.948(d), as amended herein, provides two options of test site validation procedures for radiated emission measurements from 1 GHz to 18 GHz: SVWSR and TDSV. The Commission is not adopting Cisco's suggestion that the Commission remove references to ANSI C63.5–2017 from the version of the C63.25.1–2018 standard incorporated into the Commission's rules. References to the use of ANSI C63.5–2017 for the calibration of measurement and reference antennas are prevalent among the ANSI standards already incorporated by reference in the Commission's rules. Finally, the Commission sees no need to adopt a transition period for the use of ANSI C63.25.1–2018 as it includes the test site validation option provided by the previous ANSI C63.4–2014.

"American National Standard of Procedures for Compliance Testing of Unlicensed Wireless Devices" (ANSI C63.10–2020)

In the NPRM, in response to a petition filed by ANSC C63, the Commission proposed to incorporate by reference ANSI C63.10–2020, "American National Standard of Procedures for Compliance Testing of Unlicensed Wireless Devices," into the Commission's rules to replace existing references to ANSI C63.10–2013. The ANSI C63.10–2020 standard was approved by ANSI on September 10, 2020, and updates the measurement procedures set forth in ANSI C63.10–2013, which is currently referenced in §§ 2.910, 2.950, 15.31, and 15.38 of the Commission's rules. The standard addresses "the procedures for testing the compliance of a wide variety of unlicensed wireless transmitters . . . including, but not limited to, remote control and security unlicensed wireless devices, frequency hopping and direct sequence spread spectrum devices, anti-pilferage devices, cordless telephones, medical unlicensed wireless devices, Unlicensed National Information Infrastructure (U–NII) devices, intrusion detectors, unlicensed wireless devices operating on frequencies below 30 MHz, automatic vehicle identification systems, and other unlicensed wireless devices authorized by a radio regulatory authority."

The Commission tentatively concluded that it would be appropriate to simply replace the existing standard references with references to the new standard, subject to a two-year or other appropriate transition period. The Commission asked whether any procedures or techniques included in the standard would not be appropriate for use in the context of demonstrating compliance with the Commission's equipment authorization rules. Similarly, the Commission also asked which, if any, of the Commission rules that do not currently reference ANSI C63.10–2013 should reference ANSI C63.10–2020. Finally, the Commission asked whether a transition period during which either version of ANSI C63.10 could be used would be appropriate.

Several commentors support adopting the updated standard. National Technical Systems states that "it is assumed that if C63.4a is not adopted then adoption of ANSI C63.10–2020 would exclude the normative reference to ANSI C63.4a." ITI supports the adoption of the standard in full, while suggesting that C63.10–2020 be applied immediately while accepting reference to C63.10–2013 for up to two years in order to "allow test labs and manufacturers adequate time to procure and complete necessary actions." It also notes that products that were assessed and released in accordance with the previous standard should not be required to be assessed to C63.10–2020 unless the product changes or needs an updated certification. Cisco, A2LA, and ANSI C63 support adopting the new standard in full and offer no further comment.

The new edition of ANSI C63.10–2020 not only provides updates to the methods in the standard but also adds new methods. The Commission finds that it is necessary at this time to update §§ 2.910, 2.950, 15.31(a)(3), and 15.38(g)(3) to incorporate by reference ANSI C63.10–2020. This update to the Commission's rules will address advancements in compliance testing methods that have accompanied the growth of wireless devices and ensure the continued integrity of the relevant measurement data. With regard to the normative reference to ANSI C63.4–2017, the Commission does not find it necessary to exclude it. The Commission notes that C63.10–2020 refers to ANSI C63.4–2017 for 0.3 GHz to 1 GHz (NSA) test site validation procedures in lieu of the NSA validation methods contained in ANSI C63.4–2014. The C63.10–2020 standard includes ANSI C63.4–2017 in its list of normative references, in Clause 5.2 when specifying an appropriate radiated test site for performing the compliance measurements, and in Clause 6.5.2 when specifying permissible distances between antennas when performing radiated tests. The C63.10–2020 standard is a North American standard rather than a U.S. standard and thus accommodates both Canadian and U.S. regulations. Canada has already recognized ANSI C63.4–2017 in its regulations but, prior to this proceeding, the U.S. has not. The reference to ANSI C63.4–2017 in the standard contains a footnote reference to 47 CFR 15.31 in recognition that ANSI C63.4–2017 may not be adopted by the U.S. regulators. To accommodate the transition to this new standard, and as proposed in the NPRM and supported by ITI, the Commission will permit the use of either ANSI C63.10–2013 or ANSI C63.10–2020 for a period of two years following the effective date of the rules adopted in this Order. The record supports this time period as sufficiently reasonable for the affected entities to procure the necessary equipment and implement the required changes.

*Other Standards*

In addition to addressing new specific incorporation by reference proposals, the Commission in the NPRM made tentative proposals and sought to refresh the record obtained in response to the Standards Update Notice that was previously issued by OET. Further, the Commission made proposals intended to "clean up" the rules by addressing several obsolete references and asked whether any additional similar rules changes would be appropriate.

"General Requirements for the Competence of Testing and Calibration Laboratories" (ISO/IEC 17025:2017(E))

Measurement data intended to demonstrate compliance with certain Commission requirements must be obtained from an accredited testing laboratory. Currently, §§ 2.910, 2.948, 2.949, 2.962, and 68.162 incorporate by reference ISO/IEC 17025:2005(E) for the

USCA Case #23-1311    Document #2025984    Filed: 11/08/2023    Page 9 of 12

requirements related to test laboratory accreditation. In November 2017, ISO/IEC published ISO/IEC 17025:2017(E)—a new version of the test laboratory accreditation standard currently referenced in the Commission's rules. In the Standards Update Notice, OET proposed to update the Commission's rules by replacing references to ISO/IEC 17025:2005(E) with references to ISO/IEC 17025:2017(E).

In the NPRM, the Commission proposed to incorporate by reference into its rules ISO/IEC 17025:2017(E) in its entirety, including Clause 8.1—Option A and Option B. Options A and B were specifically addressed in light of comments made in response to the Standards Update Notice. The Commission tentatively concluded that the flexibility of having both options merits that both options should be included when incorporating ISO/IEC 17025:2017(E) into the Commission's rules. Additionally, in the NPRM, the Commission discussed issues related to the passage of time since the release of the Standards Update Notice, and, noting the two year re-accreditation process, it tentatively proposed a two-year transition to the new standard instead of the originally proposed three-year period.

A2LA supports the updated standard and claims that it "provides a greater emphasis on impartiality, transparency, and the complaint processes;" takes a process approach and is outcome-focused;" "is less prescriptive and less procedure-burdened;" and "provides laboratories with greater flexibility as the standard is now underpinned with a risk-based approach to the processes." A2LA began transitioning its organization to the new standard in November 2017 in order to meet the International Laboratory Accreditation Cooperation mandate requiring completion of the transition by June 2021. ITI, ANSC C63, and Cisco all support adopting the standard and using Options A and B for lab accreditation under ISO/IEC 17025:2017(E). Additionally, Cisco welcomes any transition period up to, and including, the two-year period proposed by the Commission in the NPRM.

No party opposed the Commission's proposal, and for the reasons stated in the NPRM and as supported by the record, the Commission continues to believe that adoption of the updated standard is in the public interest, and will provide greater transparency, procedural efficiency, and flexibility. The Commission therefore incorporates by reference ISO/IEC 17025:2017(E) into §§ 2.910, 2.948, 2.949, 2.950, 2.962, and 68.162 of the Commission's rules. To accommodate the transition to this new standard, as proposed in the NPRM, the Commission will permit the use of either ISO/IEC 17025:2005(E) or ISO/IEC 17025:2017(E) for a period of two years following the effective date of the rules adopted in the Report and Order. While both ISO/IEC 17025:2005(E) and ISO/IEC 17025:2017(E) were considered valid during the transition period in effect at the time of the Standards Update PN, accreditations to ISO/IEC 17025:2005(E) became invalid after June 1, 2021. In the Standards Update PN, OET proposed to adopt a three-year transition period for use of the proposed updated standard. In consideration of the time that has passed since publication of the Standards Update PN, combined with the facts that the Commission's rules require test laboratories to complete the accreditation process every two years and that the prior standard has since become invalid within the standards body, the Commission provides a two-year transition period for compliance with ISO/IEC 17025:2017(E).

"American National Standard for Methods of Measurement of Radio-Noise Emissions From Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz, Amendment 1: Test Site Validation" (ANSI C63.4a–2017)

Sections 2.910, 2.948, 2.950, 15.31, 15.35, and 15.38 of the Commission's rules reference ANSI 63.4–2014, "American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz," as an electromagnetic compatibility (EMC) measurement standard for unintentional radiators. In late 2017, ANSC C63 published ANSI C63.4a–2017, "American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz, Amendment 1: Test Site Validation" (ANSI C63.4a–2017). In the Standards Update Notice, OET sought comment on incorporating by reference ANSI C63.4a–2017 in the appropriate rules. Although some commenters supported incorporation of the amended standard, several negative responses were received in this regard. In the NPRM, the Commission considered the comments filed pursuant to the Standards Update Notice and tentatively concluded that ANSI C63.4–2014 continues to sufficiently address current needs and that incorporation by reference of ANSI C63.4a–2017 into the Commission's rules was not warranted at that time.

Many commenters in this proceeding support the tentative conclusion made by the Commission in the NPRM that ANSI C63.4–2014 continues to sufficiently address current needs and that incorporation by reference of ANSI C63.4a–2017 into the Commission's rules is not warranted at this time. In its reply comments, ANSC C63 supports that tentative conclusion but notes that a reference to ANSI C63.4a–2017 in the Commission's rules should be optional and not a requirement because it would "allow labs to meet both Canadian and U.S. requirements with a single site validation test."

After further consideration of the information on the record, including the comments from ET Docket No. 19–48, the Commission affirms its tentative determination that ANSI C63.4–2014 continues to sufficiently address current needs and continues to retain the incorporation by reference into the Commission's rules of ANSI C63.4–2014. However, the Commission recognizes that ANSI C63.4a–2017 introduced modifications to the normalized site attenuation procedures for validating radiated test sites for use in the 30 MHz to 1 GHz frequency range. Some of these modifications involve a new acceptable test distance (five meters) and an expanded test volume to accommodate devices with heights that exceed two meters. As noted in the NPRM, several parties objected to making this a mandatory requirement because of cost concerns over the potential need to redesign and retrofit existing test facilities. However, the Commission also recognizes that in some cases these modifications may be necessary to accommodate testing of larger devices. In addition, Innovation, Science and Economic Development Canada (ISED)—a department of the Government of Canada—has adopted the amended standard. The Commission also affirms its Office of Engineering and Technology's acceptance of the use of this standard as an alternative pursuant to KDB 414788 D01 Radiated Test Site v01r01. Therefore, to accommodate testing of larger devices (greater than two meters in height) and to allow for harmonization with ISED requirements, the Commission adopts ANSI C63.4–2017 through incorporation by reference. By retaining the existing standards and also adopting the modified standard, the Commission provides two options for an electromagnetic compatibility (EMC) measurement standard for unintentional radiators to accommodate the improvements where they are most

USCA Case #23-1311    Document #2025984    Filed: 11/08/2023    Page 10 of 12

needed and retains the status quo for testing that would not benefit from the updates.

### Additional Updates

In the NPRM, the Commission noted that several part 2 rules incorporate references that have become outdated as a result of prior updates to standards that were phased in over specific transition periods—once the newer standards became the only valid procedure for compliance with the Commission's rules, the prior references became irrelevant. Specifically, the Commission proposed to delete from § 2.910 of the Commission's rules references to: ISO/IEC Guide 58:1993(E), "Calibration and testing laboratory accreditation systems—General requirements for operation and recognition," First Edition 1993; ISO/IEC Guide 61:1996(E), "General requirements for assessment and accreditation of certification/registration bodies," First Edition 1996; and ISO/IEC Guide 65:1996(E), "General requirements for bodies operating product certification systems." Additionally, the Commission proposed to delete the related transition periods provided in § 2.950 and make any necessary related administrative rule changes. The Commission also asked whether there were additional conforming or administrative updates to its rules and if any other rule modifications were needed, including updating other standards currently referenced in the rules or incorporating by reference additional standards not currently referenced in the rules.

In its comments, ITI notes that §§ 15.38(b) and 15.109(g) still reference CISPR 22 and requested that these references be updated to the latest edition of CISPR 32. ITI also recommends that a specific statement permitting grandfathering would benefit the industry, avoid confusion, and facilitate compliance. Cisco supports these additional updates. Additionally, ANSC C63 also points out that "the proposed amendment to Rule 2.910 references CISPR 16–1–4:2010–04, however, that version of the standard is out of date" and the rule "should reference the current version of the standard which is CISPR 16–1–4 2019+AMD:2020."

Absent any opposition in the record, the Commission adopts the proposals to delete references to: ISO/IEC Guide 58:1993(E), First Edition 1993; ISO/IEC Guide 61:1996(E), First Edition 1996; and ISO/IEC Guide 65:1996(E) from § 2.910 of the Commission's rules. Additionally, the Commission adopts the proposal to delete the related transition periods provided in § 2.950. The commenter recommendations to update additional references were not contemplated in the Commission's proposal, and it therefore takes no action here.

### Ordering Clauses

Accordingly, *it is ordered*, pursuant to the authority found in sections 4(i), 301, 302, and 303 of the Communications Act of 1934, as amended, 47 U.S.C. 154(i), 301, 302a, 303, that this Report and Order *is hereby adopted*.

*It is further ordered* that the amendments of parts 2, 15, 68, and 73 of the Commission's rules as set forth in Appendix A *are adopted*, effective 30 days after publication in the **Federal Register**.

*It is further ordered* that the Commission's Consumer and Governmental Affairs Bureau, Reference Information Center, *shall send* a copy of this Report and Order, including the Final Regulatory Flexibility Analysis, to the Chief Counsel for Advocacy of the Small Business Administration.

*It is further ordered* that the Office of the Managing Director, Performance Evaluation and Records Management, *shall send* a copy of this Report and Order in a report to be sent to Congress and the Government Accountability Office pursuant to the Congressional Review Act, 5 U.S.C. 801(a)(1)(A).

### List of Subjects in 47 CFR Parts 2, 15, and 68

Communications equipment, Incorporation by reference.

### List of Subjects in 47 CFR Part 73

Television.

Federal Communications Commission.

**Marlene Dortch,**
*Secretary.*

### Final Rules

For the reasons discussed in the preamble, the Federal Communications Commission amends 47 CFR parts 2, 15, 68, and 73 as follows:

## PART 2—FREQUENCY ALLOCATIONS AND RADIO TREATY MATTERS; GENERAL RULES AND REGULATIONS

■ 1. The authority citation for part 2 continues to read as follows:

**Authority:** 47 U.S.C. 154, 302a, 303, and 336, unless otherwise noted.

■ 2. Revise § 2.910 to read as follows:

### § 2.910 Incorporation by reference.

Certain material is incorporated by reference into this part with the approval of the Director of the Federal Register under 5 U.S.C. 552(a) and 1 CFR part 51. To enforce any edition other than that specified in this section, the Federal Communications Commission (FCC) must publish a document in the **Federal Register** and the material must be available to the public. All approved incorporation by reference (IBR) material is available for inspection at the FCC and at the National Archives and Records Administration (NARA). Contact the FCC at the address indicated in 47 CFR 0.401(a), phone: (202) 418–0270. For information on the availability of this material at NARA, visit *www.archives.gov/federal-register/cfr/ibr-locations.html* or email *fr.inspection@nara.gov*. The material may be obtained from the following source(s):

(a) International Electrotechnical Commission (IEC), IEC Central Office, 3, rue de Varembe, CH–1211 Geneva 20, Switzerland; email: *inmail@iec.ch*; website: *www.iec.ch*.

(1) CISPR 16–1–4:2010–04, *Specification for radio disturbance and immunity measuring apparatus and methods—Part 1–4: Radio disturbance and immunity measuring apparatus— Antennas and test sites for radiated disturbance measurements,* Edition 3.0, 2010–04; IBR approved for § 2.948(d).

(2) [Reserved]

(b) Institute of Electrical and Electronic Engineers (IEEE), 3916 Ranchero Drive, Ann Arbor, MI 48108; phone: (800) 678–4333; email: *stds-info@ieee.org*; website: *www.ieee.org/*.

(1) ANSI C63.4–2014, *American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz,* ANSI-approved June 13, 2014, Sections 5.4.4 ("Radiated emission test facilities—Site validation") through 5.5 ("Radiated emission test facilities for frequencies above 1 GHz (1 GHz to 40 GHz)"), copyright 2014; IBR approved for § 2.948(d).

(2) ANSI C63.4a–2017, *American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz, Amendment 1: Test Site Validation,* ANSI-approved September 15, 2017; IBR approved for § 2.948(d).

(3) ANSI C63.25.1–2018, *American National Standard Validation Methods for Radiated Emission Test Sites, 1 GHz to 18 GHz,* ANSI-approved December 17, 2018; IBR approved for § 2.948(d).

(4) ANSI C63.26–2015, *American National Standard of Procedures for Compliance Testing of Transmitters Used in Licensed Radio Services,* ANSI-

USCA Case #23-1311    Document #2025984    Filed: 11/08/2023    Page 11 of 12

approved December 11, 2015; IBR approved for § 2.1041(b).

(c) International Organization for Standardization (ISO), Ch. de Blandonnet 8, CP 401, CH–1214 Vernier, Geneva, Switzerland; phone: + 41 22 749 01 11; fax: + 41 22 749 09 47; email: *central@iso.org;* website: *www.iso.org.*

(1) ISO/IEC 17011:2004(E), *Conformity assessment—General requirements for accreditation bodies accrediting conformity assessment bodies,* First Edition, 2004–09–01; IBR approved for §§ 2.948(e); 2.949(b); 2.960(c).

(2) ISO/IEC 17025:2005(E), *General requirements for the competence of testing and calibration laboratories,* Second Edition, 2005–05–15; IBR approved for §§ 2.948(e); 2.949(b); 2.950(a); 2.962(c) and (d).

(3) ISO/IEC 17025:2017(E), *General requirements for the competence of testing and calibration laboratories,* Third Edition, November 2017; IBR approved for §§ 2.948(e); 2.949(b); 2.950(a); 2.962(c) and (d).

(4) ISO/IEC 17065:2012(E), *Conformity assessment—Requirements for bodies certifying products, processes and services,* First Edition, 2012–09–15; IBR approved for §§ 2.960(b); 2.962(b), (c), (d), (f), and (g).

Note 1 to § 2.910: The standards listed in paragraphs (b) and (c) of this section are also available from the American National Standards Institute (ANSI), 25 West 43rd Street, 4th Floor, New York, NY 10036; phone (212) 642–4980; email *info@ansi.org;* website: *https://webstore.ansi.org/.*

■ 3. Amend § 2.948 by revising paragraph (d) to read as follows:

### § 2.948 Measurement facilities.
\* \* \* \* \*

(d) When the measurement method used requires the testing of radiated emissions on a validated test site, the site attenuation must comply with either: the requirements of ANSI C63.4a–2017 (incorporated by reference, see § 2.910) or the requirements of sections 5.4.4 through 5.5 of ANSI C63.4–2014 (incorporated by reference, see § 2.910).

(1) Measurement facilities used to make radiated emission measurements from 30 MHz to 1 GHz must comply with the site validation requirements in either ANSI C63.4a–2017 or ANSI C63.4–2014 (clause 5.4.4);

(2) Measurement facilities used to make radiated emission measurements from 1 GHz to 18 GHz must comply with the site validation requirement of ANSI C63.25.1–2018 (incorporated by reference, see § 2.910);

(3) Measurement facilities used to make radiated emission measurements from 18 GHz to 40 GHz must comply with the site validation requirement of ANSI C63.4–2014 (clause 5.5.1 a) 1)), such that the site validation criteria called out in CISPR 16–1–4:2010–04 (incorporated by reference, see § 2.910) is met.

(4) Test site revalidation must occur on an interval not to exceed three years.
\* \* \* \* \*

■ 4. Revise § 2.950 to read as follows:

### § 2.950 Transition periods.

(a) Prior to October 30, 2025, a prospective or accredited testing laboratory or telecommunication certification body must be capable of meeting the requirements and conditions of ISO/IEC 17025:2005(E) (incorporated by reference, see § 2.910) or ISO/IEC 17025:2017(E) (incorporated by reference, see § 2.910). On or after October 30, 2025, a prospective or accredited testing laboratory or telecommunication certification body must be capable of meeting the requirements and conditions of ISO/IEC 17025:2017(E) (incorporated by reference, see § 2.910).

(b) All radio frequency devices that were authorized under the verification or Declaration of Conformity procedures prior to November 2, 2017, must continue to meet all requirements associated with the applicable procedure that were in effect immediately prior to November 2, 2017. If any changes are made to such devices after November 2, 2018, the requirements associated with the Supplier's Declaration of Conformity apply.

## PART 15—RADIO FREQUENCY DEVICES

■ 5. The authority citation for part 15 continues to read as follows:

Authority: 47 U.S.C. 154, 302a, 303, 304, 307, 336, 544a, and 549.

■ 6. Amend § 15.31 by revising paragraph (a)(3) to read as follows:

### § 15.31 Measurement standards.

(a) \* \* \*

(3) Other intentional radiators must be measured for compliance using the following procedure: ANSI C63.10–2020 (incorporated by reference, see § 15.38).
\* \* \* \* \*

■ 7. Amend § 15.37 by adding paragraph (s) to read as follows

### § 15.37 Transition provisions for compliance with this part.
\* \* \* \* \*

(s) Prior to October 30, 2025, measurements for intentional radiators subject to § 15.31(a)(3) must be made using the procedures in ANSI C63.10–2013 or ANSI C63.10–2020 (incorporated by reference, see § 15.38). On or after October 30, 2025, measurements for intentional radiators subject to § 15.31(a)(3) must be made using the procedures in ANSI C63.10–2020 (incorporated by reference, see § 15.38).

■ 8. Revise § 15.38 to read as follows:

### § 15.38 Incorporation by reference.

Certain material is incorporated by reference into this part with the approval of the Director of the Federal Register under 5 U.S.C. 552(a) and 1 CFR part 51. To enforce any edition other than that specified in this section, the Federal Communications Commission (FCC) must publish a document in the **Federal Register** and the material must be available to the public. All approved incorporation by reference (IBR) material is available for inspection at the FCC and at the National Archives and Records Administration (NARA). Contact the FCC at the address indicated in 47 CFR 0.401(a), phone: (202) 418–0270. For information on the availability of this material at NARA, visit *www.archives.gov/federal-register/cfr/ibr-locations.html* or email *fr.inspection@nara.gov.* The material may be obtained from the following source(s):

(a) American National Standards Institute (ANSI), 25 West 43rd Street, 4th Floor, New York, NY 10036; phone: (212) 642–4980; email *info@ansi.org;* website: *https://webstore.ansi.org/.*

(1) ANSI C63.17–2013, *American National Standard for Methods of Measurement of the Electromagnetic and Operational Compatibility of Unlicensed Personal Communications Services (UPCS) Devices,* approved August 12, 2013; IBR approved for § 15.31.

(2) Third Edition of the International Special Committee on Radio Interference (CISPR), Pub. 22, *Information Technology Equipment-Radio Disturbance Characteristics-Limits and Methods of Measurement,* 1997; IBR approved for § 15.09.

(b) Cable Television Laboratories, Inc., 858 Coal Creek Circle, Louisville, Colorado 80027; phone: (303) 661–9100; website: *www.cablelabs.com/.*

(1) M–UDCP–PICS–I04–080225, *Uni-Directional Cable Product Supporting M–Card: Multiple Profiles; Conformance Checklist: PICS,* February 25, 2008; IBR approved for § 15.123(c).

USCA Case #23-1311    Document #2025984    Filed: 11/08/2023    Page 12 of 12

(2) TP–ATP–M–UDCP–I05–20080304, *Uni-Directional Digital Cable Products Supporting M–Card; M–UDCP Device Acceptance Test Plan,* March 4, 2008; IBR approved for § 15.123(c).

(c) Consumer Technology Association (formerly Consumer Electronics Association), 1919 S. Eads St., Arlington, VA 22202; phone: (703) 907–7634; email: *CTA@CTA.tech*; website: *www.cta.tech/.*

(1) CEA–542–B, *CEA Standard: Cable Television Channel Identification Plan,* July 2003; IBR approved for § 15.118.

(2) CEA–766–A, *U.S. and Canadian Region Rating Tables (RRT) and Content Advisory Descriptors for Transport of Content Advisory Information using ATSC A/65–A Program and System Information Protocol (PSIP),* April 2001; IBR approved for § 15.120.

(3) EIA–608, *Recommended Practice for Line 21 Data Service,* 1994; IBR approved for § 15.120.

(4) EIA–744, *Transport of Content Advisory Information Using Extended Data Service (XDS),* 1997; IBR approved for § 15.120.

(5) Uni-Dir-PICS–I01–030903, *Uni-Directional Receiving Device: Conformance Checklist: PICS Proforma,* September 3, 2003; IBR approved for § 15.123(c).

(6) Uni-Dir-ATP–I02–040225, *Uni-Directional Receiving Device, Acceptance Test Plan,* February 25, 2004; IBR approved for § 15.123(c).

(d) European Telecommunications Standards Institute, 650 Route des Lucioles, F–06921 Sophia Antipolis Cedex, France; website: *www.etsi.org/.*

(1) ETSI EN 300 422–1 V1.4.2 (2011–08), *Electromagnetic compatibility and Radio spectrum Matters (ERM); Wireless microphones in the 25 MHz to 3 GHz frequency range; Part 1: Technical characteristics and methods of measurement,* Copyright 2011; IBR approved for § 15.236(g).

(2) [Reserved]

(e) Institute of Electrical and Electronic Engineers (IEEE), 3916 Ranchero Drive, Ann Arbor, MI 48108; phone: (800) 678–4333; email: *stds-info@ieee.org*; website: *www.ieee.org/.*

(1) ANSI C63.4–2014: *American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz,* ANSI approved June 13, 2014; IBR approved for § 15.35(a).

(2) ANSI C63.4–2014, *American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz,* ANSI approved June 13, 2014 (excluding clauses 4.5.3, 4.6, 6.2.13, 8.2.2, 9, and 13); IBR approved for § 15.31(a).

(3) ANSI C63.10–2013, *American National Standard of Procedures for Compliance Testing of Unlicensed Wireless Devices,* ANSI approved June 27, 2013; IBR approved for §§ 15.31(a); 15.37(s).

(4) ANSI C63.10–2020, *American National Standard of Procedures for Compliance Testing of Unlicensed Wireless Devices,* ANSI-approved September 10, 2020; IBR approved for §§ 15.31(a); 15.37(s).

(f) Society of Cable Telecommunications Engineers (SCTE), 140 Philips Rd., Exton, PA 19341; phone: (610) 363–6888; email: *info@scte.org*; website: *www.scte.org.*

(1) SCTE 28 2003 (formerly DVS 295): "Host-POD Interface Standard," 2003; IBR approved for § 15.123.

(2) SCTE 40 2003 (formerly DVS 313): "Digital Cable Network Interface Standard," 2003; IBR approved for § 15.123.

(3) SCTE 41 2003 (formerly DVS 301): "POD Copy Protection System," 2003; IBR approved for § 15.123.

(4) ANSI/SCTE 54 2003 (formerly DVS 241): "Digital Video Service Multiplex and Transport System Standard for Cable Television," 2003; IBR approved for § 15.123.

(5) ANSI/SCTE 65 2002 (formerly DVS 234): "Service Information Delivered Out-of-Band for Digital Cable Television," 2002; IBR approved for § 15.123.

Note 1 to § 15.38: The standards listed in paragraphs (c) and (f) of this section are available from Accuris (formerly Global Engineering), 15 Inverness Way East, Englewood, CO 80112; phone: (800) 854–7179; website: *https://global.ihs.com.*

Note 2 to § 15.38: The standards listed in paragraphs (e) and (f) of this section are available from ANSI (see paragraph (a) of this section for contact information).

## PART 68—CONNECTION OF TERMINAL EQUIPMENT TO THE TELEPHONE NETWORK

■ 9. The authority citation for part 68 continues to read as follows:

**Authority:** 47 U.S.C. 154, 303, 610.

■ 10. Amend § 68.162 by:
■ a. Revising paragraphs (d)(1) and (i)(1); and
■ b. Adding note 1 to paragraph (i).

The revisions and addition read as follows:

### § 68.162  Requirements for Telecommunication Certification Bodies.

\* \* \* \* \*
(d) \* \* \*

(1) In accordance with the provisions of ISO/IEC 17065 the evaluation of a product, or a portion thereof, may be performed by bodies that meet the applicable requirements of ISO/IEC 17025 and ISO/IEC 17065, in accordance with the applicable provisions of ISO/IEC 17065, for external resources (outsourcing) and other relevant standards. Evaluation is the selection of applicable requirements and the determination that those requirements are met. Evaluation may be performed by using internal TCB resources or external (outsourced) resources.

\* \* \* \* \*

(i) \* \* \*

(1) International Organization for Standardization (ISO), Ch. de Blandonnet 8, CP 401, CH–1214 Vernier, Geneva, Switzerland; phone: + 41 22 749 01 11; fax: + 41 22 749 09 47; email: *central@iso.org*; website: *www.iso.org.*

(i) ISO/IEC 17025:2017(E), *General requirements for the competence of testing and calibration laboratories,* Third Edition, November 2017.

(ii) ISO/IEC 17065:2012(E), *Conformity assessment—Requirements for bodies certifying products, processes and services,* First Edition, 2012–09–15.

(2) [Reserved]

**Note 1 to paragraph (i):** The standards listed in paragraphs (i) of this section are also available from the American National Standards Institute (ANSI), 25 West 43rd Street, 4th Floor, New York, NY 10036; phone (212) 642–4980; email *info@ansi.org*; website: *https://webstore.ansi.org/.*

## PART 73—RADIO BROADCAST SERVICES

■ 11. The authority citation for part 73 continues to read as follows:

**Authority:** 47 U.S.C. 154, 155, 301, 303, 307, 309, 310, 334, 336, 339.

■ 12. Amend § 73.1660 by revising Note 1 to paragraph (a)(1) to read as follows:

### § 73.1660  Acceptability of broadcast transmitters.

\* \* \* \* \*

**Note 1 to paragraph (a)(1):** The verification procedure has been replaced by Supplier's Declaration of Conformity. AM, FM, and TV transmitters previously authorized under subpart J of part 2 of this chapter may remain in use. See § 2.950 of this chapter.

\* \* \* \* \*

[FR Doc. 2023–20711 Filed 9–28–23; 8:45 am]
**BILLING CODE 6712–01–P**