IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

No. 23-1311

———————

PUBLIC.RESOURCE.ORG, INC., ET AL.,

PETITIONERS,

V.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,

RESPONDENTS.

———————

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL COMMUNICATIONS COMMISSION

———————

JONATHAN S. KANTER
ASSISTANT ATTORNEY GENERAL

ROBERT B. NICHOLSON
ROBERT J. WIGGERS
ATTORNEYS

UNITED STATES
  DEPARTMENT OF JUSTICE
WASHINGTON, D.C. 20530

P. MICHELE ELLISON
GENERAL COUNSEL

JACOB M. LEWIS
DEPUTY GENERAL COUNSEL

MAUREEN K. FLOOD
COUNSEL

FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C. 20554
(202) 418-1740

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

**1. Parties.**

The petitioners are Public.Resource.Org, Inc., iFixit, Inc., and Make Community, LLC. The respondents are the Federal Communications Commission and the United States of America. The amici curiae are Reporters Committee for Freedom of the Press, the New York Times Company, the American Federation of the Blind, and Prime Access Consulting.

**2. Rulings under review.**

*Updating References to Standards Related to the Commission's Equipment Authorization Program*, Report and Order, 38 FCC Rcd 1903 (March 14, 2023).

**3. Related cases.**

This case has not previously been before this Court or any other court. We are aware of no pending cases related to this one.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

GLOSSARY .................................................................................. vii

INTRODUCTION............................................................................1

JURISDICTION................................................................................3

QUESTIONS PRESENTED .............................................................4

STATUTES AND REGULATIONS ................................................4

COUNTERSTATEMENT ...............................................................5

I.    STATUTORY AND REGULATORY BACKGROUND........................5

   A.    Incorporation By Reference ................................5

   B.    The Administrative Procedure Act's Rulemaking Requirements...........................................................9

II.   PRIOR PROCEEDINGS .........................................................10

   A.    The Commission's Equipment Authorization Program......................10

   B.    The Notice Of Proposed Rulemaking .................................12

   C.    The *Order* On Review ........................................................17

STANDARD OF REVIEW .............................................................23

SUMMARY OF ARGUMENT ......................................................23

ARGUMENT ..................................................................................25

I.    THE PETITIONERS LACK STANDING .............................................25

II.   THE COMMISSION COMPLIED WITH FEDERAL LAW AT ALL STAGES OF THE RULEMAKING .......................................30

A.    The Commission Satisfied The Administrative Procedure Act By Providing Notice Of The Substance Of Its Proposed Rules And The Issues Involved In The Rulemaking ..........................................................................31

B.    The Standards The *Order* Proposed To And Did Incorporate In The FCC's Rules Were "Reasonably Available To The Class Of Persons Affected Thereby" ....................37

CONCLUSION .............................................................................48

# TABLE OF AUTHORITIES

**CASES**

*Am. Radio Relay League v. FCC*, 524 F.3d 227 (D.C. Cir. 2008)..................................................................47

*Am. Soc'y for Testing and Materials v. Public.Resource.Org.*, 82 F.4th 1262 (2023) ............................................36

*Cellco P'ship v. FCC*, 357 F.3d 88 (D.C. Cir. 2004)....................................23

*Chamber of Commerce v. E.P.A.*, 642 F.3d 192 (D.C. Cir. 2011)..................................................................28

\* *Ctr. for Biological Diversity v. EPA*, 82 F.4th 959 (10th Cir. 2023) ............................................... 33, 34

\* *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996)..................................................................... 25, 30

*Lexmark, Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)..................................................26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................26

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014)........................................30

*NTCH, Inc. v. FCC*, 841 F.3d 497 (D.C. Cir. 2016) ........................................23

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) ........................................37

*Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375 (D.C. Cir. 1973)..................................................................47

*Prison Legal News v. Samuels*, 787 F.3d 1142 (2015) ..................................................................................46

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) ................................ 26, 28

*State of Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2024)....................................26

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .............................. 29, 30

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ......................................................41

*Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607 (D.C. Cir. 2019)................................................................... 27, 29

*U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004)..................................................................33

*United States v. Palmer*, 854 F.3d 39 (D.C. Cir. 2017) ................................................................39

*United States v. Woods*, 571 U.S. 31 (2013) ...........32

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519 (1978) .........................37

**STATUTES**

\* 5 U.S.C. § 552(a)(1) ....................... 1, 3, 4, 7, 9, 24, 25, 34, 39, 40, 48

\* 5 U.S.C. § 553(b) ...............................................9, 10, 31

5 U.S.C. § 553(b)(3) ...................... 24, 25, 31, 32, 35, 37

5 U.S.C. § 553(c) .............................................................10

5 U.S.C. § 706 ...................................................................47

5 U.S.C. § 706(2)(A) ........................................................23

28 U.S.C. § 2342(1) ...........................................................4

44 U.S.C. § 1502 ................................................................7

47 U.S.C. § 302a ..............................................................10

47 U.S.C. § 302a(a) .........................................................10

47 U.S.C. § 302a(e)(1) .....................................................11

47 U.S.C. § 302a(e)(3) .....................................................11

47 U.S.C. § 402(a) ..............................................................3

National Technology Transfer and Advancement Act (NTTAA), Pub. L. No. 104-113, 110 Stat. 775 (1996) .....................................................................5

Pub. L. No. 90-23, 81 Stat. 54 (1967) ............................7

**REGULATIONS**

1 C.F.R. § 51.1 *et seq.* .................................................7, 37

1 C.F.R. § 51.1(a) ..............................................................9

1 C.F.R. § 51.3(a) ..............................................................8

1 C.F.R. § 51.3(b) ..............................................................8

1 C.F.R. § 51.5(a)(1) ..........................................................8

1 C.F.R. § 51.5(a)(2) ..........................................................8

iv

1 C.F.R. § 51.5(b)(2) ..........................................................................8

1 C.F.R. § 51.5(b)(3) ..........................................................................8

1 C.F.R. § 51.5(b)(5) ..........................................................................8

1 C.F.R. § 51.7(a)(2)(ii) ....................................................................36

1 C.F.R. § 51.7(a)(3) (1982).......................................................... 7, 35

40 C.F.R. § 770.99(g)(4) ...................................................................36

47 C.F.R. § 2.901 ..............................................................................11

47 C.F.R. § 2.906 ..............................................................................11

47 C.F.R. § 2.907 ..............................................................................11

47 C.F.R. § 2.910 .................................................................. 13, 19, 22

47 C.F.R. § 2.947 ..............................................................................13

47 C.F.R. § 2.948 ..............................................................................11

47 C.F.R. § 2.949 ..............................................................................16

47 C.F.R. Pt. 15 .................................................................................29

47 C.F.R. Pt. 68 .................................................................................11

**ADMINISTRATIVE MATERIALS**

Admin. Conf. of the United States
Recommendation 2011-5, 77 Fed. Reg. 2257
(Jan. 17, 2012) ....................................................... 38, 43, 44, 45

Admin. Conf. of the United States, 44 Fed. Reg.
1357 (Jan. 5, 1979) ...................................................................6

Incorporation by Reference, 77 Fed. Reg. 11414
(Feb. 27, 2012) .......................................................................42

Incorporation by Reference, 79 Fed. Reg. 66267
(Nov. 7, 2014)........................................................ 9, 35, 41, 42, 43

Updating References to Standards Related to the
Commission's Equipment Authorization
Program, 87 Fed. Reg. 15180 (Mar. 17, 2022) ............................ 17, 32, 38

Updating References to Standards Related to the
Commission's Equipment Authorization
Program, 88 Fed. Reg. 67108 (Sept. 29, 2023)................................... 22, 23

## OTHER MATERIALS

Black's Law Dictionary (11th Ed. 2019) .......................................................39

D.C. Cir. R. 28(a)(7) ........................................................... 2, 24, 27

Letter from David Halperin and Carl Malamud,
    Public.Resource.Org, to Cass R. Sunstein, Office
    of Management and Budget, April 11, 2012 ...............................43

Merriam Webster Dictionary ...........................................................39

Nat'l Archives Off. of the Fed. Reg., Code of Fed.
    Regul. Incorporation by Reference, June 2023
    Edition .........................................................................................41

Nat'l Inst. of Standards & Tech., *Standards
    Incorporated by Reference (SIBR) Database* ...............................9

Office of Management and Budget Circular A-119:
    Federal Participation in the Development and Use
    of Voluntary Consensus Standards and In
    Conformity Assessment Activities (2016) .................... 6, 38, 39, 43, 44, 45

*\* Cases and other authorities principally relied upon are marked with
asterisks.*

# GLOSSARY

| | |
|---|---|
| ACUS | Administrative Conference of the United States |
| ANSI | American National Standards Institute |
| ANSC C63 | Accredited National Standards Committee C63 |
| EPA | Environmental Protection Agency |
| FCC | Federal Communications Commission |
| IEC | International Electrotechnical Commission |
| IBR | Incorporation by Reference |
| ISO | International Organization for Standardization |
| NTTAA | National Technology Transfer and Advancement Act, § 12, Pub. L. No. 104-113, 110 Stat. 775, 782-783 (1996) |
| OFR | Office of the Federal Register |
| OMB | Office of Management and Budget |

_____

No. 23-1311

_____

PUBLIC.RESOURCE.ORG, INC., ET AL.,

PETITIONERS,

V.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,

RESPONDENTS.

_____

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL COMMUNICATIONS COMMISSION

_____

BRIEF FOR RESPONDENTS

_____

## INTRODUCTION

Federal agencies must publish "substantive rules of general

applicability" in the Federal Register. 5 U.S.C. § 552(a)(1). Incorporation by

reference is a longstanding practice that allows an agency to refer, in the text

of a published rule, to material available elsewhere instead of republishing

that material in the rule itself. *Id*.

The Federal Communications Commission (FCC) in the *Order* on

review incorporated by reference technical standards published by three

private organizations (the American National Standards Institute, the

International Organization for Standardization, and the International

Electrotechnical Commission) in the agency's rules governing the

authorization of radiofrequency-emitting devices that are imported into or

marketed in the United States. The standards—which update those previously

incorporated by reference in the Commission's rules—specify the tests and

measurements that laboratories use to determine whether devices comply

with FCC regulations preventing harmful radiofrequency interference, and

the criteria for accrediting those laboratories.

In seeking review, the petitioners do not address the suitability of

updating the standards. Instead, they contend that by incorporating the

standards in the rules by reference to their availability elsewhere, the

Commission violated the notice-and-comment requirements of the

Administrative Procedure Act, and undermined the public interest in making

law available to the public.

This Court, however, lacks jurisdiction over the petitioners'

contentions because they lack standing to challenge the *Order*. The

petitioners are not laboratories engaged in the testing of radiofrequency-

emitting equipment, and they have not identified any interest that would be

affected by the rules proposed and adopted by the Commission. S*ee* D.C. Cir.

R. 28(a)(7). At best, the petitioners have a purely academic concern with the

practice of incorporation by reference. That abstract concern cannot establish the injury-in-fact required for standing.

The petitioners' challenge fails even if the Court were to reach the merits of their arguments. The Commission provided the public sufficient notice and an opportunity to comment in the rulemaking by describing the standards that it proposed to incorporate in its rules, discussing its reasons for incorporating the standards, and explaining how interested parties could access the standards. The Commission also complied with the law governing incorporation by reference by ensuring that the standards were "reasonably available to the class of persons affected thereby." 5 U.S.C. § 552(a)(1). That is all that the law requires.

The petition for review should be dismissed. The petitioners' challenge also fails on the merits.

## JURISDICTION

The *Order* on review was released on March 14, 2023, and published in the Federal Register on September 29, 2023. *Updating References to Standards Related to the Commission's Equipment Authorization Program*, 38 FCC Rcd 1903 (2023) (*Order*); 88 Fed. Reg. 67108 (Sept. 29, 2023). This Court's jurisdiction is invoked under 47 U.S.C. § 402(a) and 28 U.S.C.

§ 2342(1). The Court, however, lacks jurisdiction because the petitioners lack standing.

## QUESTIONS PRESENTED

1. Whether the petitioners have standing to challenge the *Order* when they are not, and do not appear to represent, laboratories engaged in the testing of radiofrequency-emitting equipment governed by the rules the *Order* adopted.

2. Whether the Commission provided sufficient notice and an opportunity to comment in the rulemaking proceeding by identifying the standards it proposed to incorporate by reference in its rules, and where those standards might be obtained.

3. Whether the standards the Commission incorporated by reference in its rules were "reasonably available to the class of persons affected thereby," 5 U.S.C. § 552(a)(1).

## STATUTES AND REGULATIONS

The pertinent statutes and regulations are attached in an addendum to this brief.

# COUNTERSTATEMENT

## I. STATUTORY AND REGULATORY BACKGROUND

### A. Incorporation By Reference

1. Federal agencies often incorporate in their regulations technical standards that are promulgated by private consensus-based "standards development organizations." Often, the standards development organization copyrights the standards and sells copies to recover the expenses incurred in developing the standards.

Federal law has long encouraged agencies to incorporate privately-developed consensus standards in their regulations. The National Technology Transfer and Advancement Act of 1995 requires all federal agencies to "use technical standards that are developed or adopted by voluntary consensus standards bodies" as a means of carrying out their policies unless doing so "is inconsistent with applicable law or otherwise impractical." National Technology Transfer and Advancement Act (NTTAA) § 12, Pub. L. No. 104-113, 110 Stat. 775, 782-783 (1996) (codified as part of 15 U.S.C. § 272). The NTTAA codified longstanding federal policies that it is "more efficient[] and effective[]" for agencies to use voluntary standards that have been created through a consensus process by private organizations with "expertise" in an industry, than it is for the government to formulate its own standards to

impose on an industry. *See* Admin. Conf. of the United States, 44 Fed. Reg. 1357, 1357 (Jan. 5, 1979).

In implementing the NTTAA, the Office of Management and Budget has instructed federal agencies to use voluntary standards "in lieu of government-unique standards in their procurement and regulatory activities, except where inconsistent with law or otherwise impractical." Office of Management and Budget Circular A-119: Federal Participation in the Development and Use of Voluntary Consensus Standards and In Conformity Assessment Activities (2016) (OMB Circular A-119 (2016)), 17.[1] As the Circular explains, the use of such standards is intended to "[e]liminat[e] the cost to the Federal government of developing its own standards," "provid[e] incentives and opportunities to establish standards that serve national needs," and "further[] the reliance on private sector expertise to supply the Federal government with cost-efficient goods and services." *Id*., 14.

2. Federal agencies are required to publish "substantive rules of general applicability" in the Federal Register. 5 U.S.C. § 552(a)(1)(D). "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a

---

[1] Available at: https://www.whitehouse.gov/wp-content/uploads/2020/07/revised_circular_a-119_as_of_1_22.pdf

matter required to be published in the Federal Register and not so published." *Id.*, § 552(a)(1).

Through a process known as "incorporation by reference," federal agencies have long been authorized to meet this publication requirement by referring in the text of the regulation to material accessible elsewhere. *See, e.g.*, Pub. L. No. 90-23, § 1, 81 Stat. 54 (1967) (enacting 5 U.S.C. § 552(a)(1)). For valid incorporation, the material referenced must be "reasonably available to the class of persons affected" by it, and the Director of the Office of the Federal Register must approve the agency's incorporation by reference. 5 U.S.C. § 552(a)(1). Properly incorporated material is "deemed published" in the Federal Register. *Id.* Incorporation by reference "[s]ubstantially reduces the volume of material published in the Federal Register." 1 C.F.R. § 51.7(a)(3) (1982).

3. The Office of the Federal Register, a component of the National Archives and Records Administration, 44 U.S.C. § 1502, has adopted rules governing federal agencies' incorporation of material by reference. *See* 1 C.F.R. § 51.1 *et seq.*

Under the rules, the Office of the Federal Register does not require an agency to request formal approval to incorporate material in proposed rules. However, the agency must "[d]iscuss, in the preamble of the proposed rule,

the ways that the materials it proposes to incorporate by reference are reasonably available to interested parties or how it worked to make those materials reasonably available to interested parties," 1 C.F.R. § 51.5(a)(1), and "[s]ummarize…the material it proposes to incorporate by reference," *id*., § 51.5(a)(2). The Director will informally approve the proposed incorporation by reference if the preamble of the proposed rule meets these requirements. *Id*., § 51.3(a).

An agency must submit a formal, written request to incorporate materials in a final rule. The preamble of the final rule must "[d]iscuss…the ways that the [incorporated] materials…are reasonably available to interested parties and how interested parties can obtain the materials" and "[s]ummarize…the material it incorporates by reference." 1 C.F.R. § 51.5(b)(2), (3). The agency also must "[e]nsure that a copy of the incorporated material" in the final rule "is on file at the Office of the Federal Register." *Id*., § 51.5(b)(5). The Director will formally approve the incorporation by reference if the agency satisfies each of these requirements. *Id*., § 51.3(b).

Thousands of private technical standards are incorporated by reference in the regulations of a host of federal agencies, including the Environmental Protection Agency, the Department of Energy, the Nuclear Regulatory

Commission, the Consumer Product Safety Commission, and the Occupational Safety and Health Administration. Nat'l Inst. of Standards & Tech., *Standards Incorporated by Reference (SIBR) Database*, http://sibr.nist.gov (last visited May 13, 2024).

The Office of the Federal Register's regulations do not generally specify how incorporated materials are to be made "reasonably available to the class of persons affected thereby." 5 U.S.C. § 552(a)(1); *see* 1 C.F.R. § 51.1(a). However, the Office has determined that "reasonably available" access does not require an agency to ensure free, unlimited access to all materials incorporated in the Code of Federal Regulations. 79 Fed. Reg. 66267, 66268 (Nov. 7, 2014) (*OFR 2014 Rulemaking Notice*). It has determined that mandating free access to all incorporated material—much of which is copyrighted—would "compromise the ability of regulators to rely on voluntary consensus standards, possibly requiring them to create their own standards," in contravention of federal policy. *Id.*

## B. The Administrative Procedure Act's Rulemaking Requirements

The Administrative Procedure Act requires an agency to initiate the process of adopting a new rule by publishing a "[g]eneral notice of proposed rule[ ]making" in the Federal Register. 5 U.S.C. § 553(b). The notice must include "(1) a statement of the time, place, and nature of public rule[ ]making

proceedings; (2) reference to the legal authority under which the rule is proposed; [and] (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved." *Id*. After providing the required notice, "the agency shall give interested persons an opportunity to participate in the rule making." *Id*., § 553(c).

## II. PRIOR PROCEEDINGS

### A. The Commission's Equipment Authorization Program

Section 302 of the Communications Act of 1934, 47 U.S.C. § 302a, as amended (the Communications Act), provides that the Commission may enact reasonable regulations governing the interference potential of devices emitting radiofrequency energy that can cause harmful interference to radio communications. 47 U.S.C. § 302a(a). The Commission has exercised this authority by establishing technical rules for radiofrequency-emitting devices. To ensure compliance with those rules, the Commission has established an equipment authorization program.

Part 2 of the Commission's rules provides two different approval procedures for radiofrequency-emitting devices subject to equipment authorization—certification and Supplier's Declaration of Conformity. 47

C.F.R. § 2.901.[2] Certifications are granted by Telecommunication Certification Bodies based on their evaluation of documentation and test data prepared by FCC-accredited testing laboratories. 47 C.F.R. § 2.907. In contrast, a Supplier's Declaration of Conformity allows a radiofrequency-emitting device to be marketed if the manufacturer, assembler, importer, or seller of the device has had it tested for compliance with the Commission's rules. 47 C.F.R. § 2.906. Though both processes rely on laboratory testing to demonstrate compliance with the Commission's technical rules, certification testing must be performed by an accredited testing laboratory recognized by the agency. 47 C.F.R. § 2.948.[3]

The Commission's equipment authorization rules incorporate by reference standards that have been published by the American National Standards Institute (ANSI), Accredited National Standards Committee

---

[2] Part 68 of the Commission's rules includes technical requirements for terminal equipment (*i.e.*, devices like landline phones that are attached by a customer to the public telephone network). *See* 47 C.F.R. § 68.1. Part 68 includes equipment certification requirements that are similar to those in Part 2 of the Commission's rules.

[3] Section 302a of the Act permits the Commission to "authorize the use" of private laboratories for "testing and certifying the compliance of" radiofrequency-emitting devices with the FCC's technical rules, and to "establish such qualifications and standards as it deems appropriate for such private organizations, testing, and certification." 47 U.S.C. § 302a(e)(1), (3).

(ANSC), the International Organization for Standardization (ISO), and the International Electrotechnical Commission (IEC).[4] Incorporating standards has been a "longstanding practice that reflects [the Commission's] desire to harmonize [its] rules with international standards" and to comply with the directive that agencies "use industry developed standards rather than develop their own." *NPRM*, ¶ 7 (JA 38).

## B. The Notice Of Proposed Rulemaking

On January 24, 2022, the Commission released a notice of proposed rulemaking that "propose[d] targeted updates" to its rules to incorporate four standards "that are integral to the testing of [radiofrequency] equipment and accreditation of laboratories that test [radiofrequency] devices." *NPRM*, ¶ 2 (JA 36). The *NPRM* described each standard, and if the standard had previously been incorporated in the Commission's rules, the *NPRM* also

---

[4] Accredited National Standards Committee C63 is a standards organization that develops electromagnetic capability measurement standards and testing procedures. Its standards are published by the American National Standards Institute. The International Organization for Standards is an independent, non-governmental international organization that develops voluntary international standards. The International Electrotechnical Commission develops international standards for electrical, electronic, and related technologies. *Updating References to Standards Related to the Commission's Equipment Authorization Program*, 37 FCC Rcd 1318, 1320, ¶ 7, nn.13, 14 (2022) (*NPRM*) (JA 38).

described any changes made by the updated version of the standard that the Commission was proposing to incorporate. *See id*., ¶¶ 11-24 (JA 40-46).

The proposed standards fell into two general categories.[5]

1. The first category involved measurement standards and laboratory testing procedures. "Compliance testing is central to the [Commission's] equipment authorization program." *NPRM*, ¶ 8 (JA 38-39). "[T]o ensure the integrity of the measurement data associated with an equipment authorization," *id.*, FCC rules require laboratories to measure radiofrequency emissions using standards and procedures that are "acceptable to the Commission and published by national engineering societies." 47 C.F.R. § 2.947. Where appropriate, the Commission has incorporated those standards in its rules. *See, e.g.*, 47 C.F.R. § 2.910.

The Commission in the *NPRM* sought comment on three standards specifying procedures for testing radiofrequency-emitting devices. First, the Commission proposed to incorporate a new standard, "American National

---

[5] The Commission initiated the rulemaking in response to two petitions filed by Accredited National Standards Committee C63, which asked the Commission to incorporate in its rules a new standard and newer versions of already-incorporated standards. *NPRM*, ¶ 11 (JA 40-41). The Commission also sought to refresh the record with respect to two incorporated standards that the agency's Office of Engineering and Technology had proposed to update. *Id.*, ¶ 18 (JA 44).

Standard Validation Methods for Radiated Emission Test Sites; 1 GHz to 18 GHz" (ANSI C63.25.1-2018), which specifies how to validate that a test site will accurately measure radiofrequency emissions in a designated frequency band.[6] The new standard added a method to validate that a test site can accurately measure radiofrequency emissions between 1 GHz to 18 GHz. *NPRM*, ¶ 13 (JA 41-42).

The Commission also proposed to incorporate an updated version of "American National Standard of Procedures for Compliance Testing of Unlicensed Devices" (ANSI C63.10-2020), which specifies "the procedures for testing the compliance of a wide variety of unlicensed wireless transmitters." *NPRM*, ¶¶ 14-16 (JA 42-43).[7] An equipment authorization application for an unlicensed wireless device must be supported by measurement data obtained using the test procedures specified in ANSI

_____

[6] The characteristics of a test site can affect the measurement of radiofrequency emissions. For example, the Commission's rules provide that "[f]ield strength measurements shall be made, to the extent possible, on an open area test site" (*i.e.*, a flat area that is free of obstructions). Indoor test sites can similarly provide valid measurements if properly calibrated. Thus, to ensure the accuracy of test measurement data, laboratories that test devices for the FCC's equipment authorization program must use test sites that conform to ANSI C63.25.1.

[7] Unlicensed wireless devices include "remote control and security" devices, "cordless telephones," "medical" devices, and "intrusion detectors," among other devices. *Order*, ¶ 21 (JA 9-10).

14

C63.10. The *NPRM* described 10 different changes and updates to the existing standard (*e.g.*, updating "Millimeter wave measurement procedures" and adding "TV White Space test methods"). *Id.*, ¶ 15 (JA 42).

Further, the Commission sought comment on incorporating the newest version of "American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz" (ANSI C63.4a-2017). That standard establishes the electromagnetic compatibility measurement for an unintentional radiator (*i.e.*, a device that uses radiofrequency signals but is not intended to radiate radiofrequency energy).[8] The Commission tentatively decided that incorporating ANSI C63.4a-2017 "[wa]s not warranted at this time," because the current standard (ANSI C63.4a-2014) "sufficiently address[ed] current needs." *NPRM*, ¶ 24 (JA 45-46).

2. The second category involved accreditation standards for testing facilities. An application for an equipment certification must be supported with measurement data obtained from an accredited testing laboratory.

---

[8] Electromagnetic compatibility is the ability of a radiating device to operate in such a way that the electromagnetic disturbance it generates does not interfere with radio and telecommunications equipment.

*NPRM*, ¶ 9 (JA 39); 47 C.F.R. § 2.949.[9] The Commission in the *NPRM*
sought comment on updating two standards that specify laboratory
accreditation procedures.

The Commission proposed to incorporate "General requirements for
the competence of testing and calibration laboratories" (ISO/IEC
17025:2017(E)). That standard, which is an update to a standard previously
incorporated in the Commission's rules, specifies the criteria that an
accrediting body employs to examine the competency of a laboratory.
Accreditation considers a laboratory's processes, procedures, information
documentation, and organizational responsibilities as well as the non-
technical characteristics of a laboratory, including the qualifications of its
personnel, management systems, and record keeping and reporting practices.
*NPRM*, ¶ 9 (JA 39).

The Commission also proposed to update the rules that reference
"Conformity assessment—requirements for accreditation bodies accrediting

---

[9] The Commission does not accredit testing laboratories. Instead, it applies
the standards in its rules to determine whether an entity known as a
"conformity assessment body" is qualified to accredit testing laboratories. If
the conformity assessment body satisfies the standards incorporated in the
FCC's rules, then the Commission "recognizes" it, and the testing
laboratories that it accredits are authorized to conduct certification testing for
radiofrequency-emitting devices.

conformity assessment bodies" (ISO/IEC 17011:2004(E)) to reflect a newer version of the same standard (ISO/IEC 17011:2017(E)). Only laboratories that have been accredited by Commission-recognized accreditation bodies can perform compliance testing in support of an application for an equipment certification. To be recognized by the Commission, an accrediting body must demonstrate that it complies with the competency and impartiality requirements specified in ISO/IEC 17011:2017(E). *NPRM*, ¶ 9 (JA 39).

A summary of the *NPRM* was published in the Federal Register on March 17, 2022. 87 Fed. Reg. 15180 (Mar. 17, 2022). It identified and described the standards that the Commission proposed to incorporate by reference. *See* 87 Fed. Reg. at 15182-86. It also stated that the American National Standards Institute standards could be purchased from the Institute for Electrical and Electronic Engineers, and the ISO/IEC standard from the International Organization for Standards. All were also available for public inspection at the Commission's headquarters in Washington, D.C. *See id.*, 15186.

## C. The *Order* On Review

Upon consideration of comments from interested parties, the Commission on March 10, 2023, adopted an order that "update[d] [its] rules

to incorporate four new and updated standards that are integral to equipment testing." *Order*, ¶ 1 (JA 1).

1. Before addressing the rule updates proposed in the *NPRM*, the Commission responded to the petitioners' comments, which "focus[ed] on a single issue: the public availability and accessibility of documents that are proposed to be incorporated by reference into law." Comments of Public.Resource.Org *et al*., 3 (PRO Comments) (JA 63). The petitioners clarified that they "[we]re not commenting…on the substantive merits of the proposed rule[s]," but instead were "ask[ing] the FCC to recognize that it has acted illegally and arbitrarily at this Notice of Proposed Rulemaking…stage in not making the details of the standards…available to [them] and other members of the public on a free and unrestricted basis." *Id*., 4 (JA 64). They asked the Commission to "restart" the rulemaking process with "everyone having free access and the right to copy" the technical standards under consideration. *Id.*

The Commission denied the petitioners' request, observing that nothing in federal law or policy requires an agency to provide free, unlimited access to material that it proposes to incorporate in its rules. *Order*, ¶ 8 (JA 4). The Commission specifically noted that the Office of the Federal Register had

declined to require free, online access to all materials incorporated by reference into the Code of Federal Regulations. *Id.*

Next, the Commission described how it had made the standards "reasonably available," 5 U.S.C. § 552(a)(1), throughout the rulemaking process. *Order*, ¶ 9 (JA 4-5). The Commission explained that the Federal Register summary of the *NPRM* "provided sources through which interested persons could obtain copies of the relevant standards and stated that a copy of each standard was available for inspection at the FCC's main office." *Id. See* 47 C.F.R. § 2.910. The Commission also noted that, consistent with federal guidance, its staff had encouraged the standards-setting organizations to make the standards available online in a read-only format. *Order*, ¶ 9 (JA 4-5). And it pointed out that copies of the standards were available for direct purchase prior to release of the *NPRM*. *Id.*

The Commission was not persuaded that, in order "to comment on the" *NPRM*, the petitioners "would have to each expend $589" to purchase copies of the standards, PRO Comments, 4 (JA 64). *Order*, ¶ 10 (JA 5). The agency pointed out that at least two of the standards were available online for free in read-only format during the rulemaking; free abstracts and summaries of the standards are widely available; and the standards were at all times available for inspection at FCC headquarters. *Order*, ¶ 10 (JA 5). The Commission

found it noteworthy that "none of the comments" discussing "the technical merits" of the proposed rule updates "identified any impediments to finding and accessing the standards under consideration." [10] *Id.*

The Commission was also "confident" that interested parties would be able to access the standards "on an ongoing basis" because it "anticipate[d]" that all of the standards, once incorporated, "w[ould] be made available" in the standards bodies' free, online reading rooms. *Id.*, ¶ 11 (JA 5-6).

The Commission "recognize[d]" that each means of accessing the standards has "limitations" relative to free access "(*e.g.*, cost, travel for in-person inspection, limitations on how the materials may be downloaded, shared, or otherwise used)," but it concluded that none of them would prevent interested parties from accessing and using the standards. *Id.*

Finally, the Commission identified where interested parties can access each of the standards that the agency was incorporating in its rules. *Order*, ¶¶ 12-16 (JA 6-7).

2. The Commission then updated its rules to incorporate four of the standards proposed in the *NPRM*.

---

[10] Substantive comments were filed by the Information Technology Industry Council, Cisco Systems, Inc., Accredited National Standards Committee C63, the American Association for Laboratory Accreditation, and National Technical Systems.

First, the Commission incorporated "American National Standard Validation Methods for Radiated Emission Test Sites; 1 GHz to 18 GHz" (ANSI C63.25.1-2018). *Order*, ¶ 20 (JA 8-9). The Commission concluded that "incorporating ANSI C63.25.1-2018 among the procedures currently described in [its rules] would serve the public interest by providing useful options and potential benefits for test site validation of radiated emission measurements from 1 GHz to 18 GHz." *Id*.

Second, the Commission incorporated "American National Standard of Procedures for Compliance Testing of Unlicensed Devices" (ANSI C63.10-2020). *Order*, ¶ 24 (JA 10). The Commission decided that it should update its rules to incorporate the new standard in order "to address advancements in compliance testing methods that have accompanied the growth of wireless devices and ensure the continued integrity of the relevant measurement data." *Id*.

Third, the Commission incorporated "General requirements for the competence of testing and calibration laboratories" (ISO/IEC 17025:2017(E)). *Order*, ¶ 29 (JA 12). The Commission found, in line with comments, that "adoption of the updated standard is in the public interest, and will provide greater transparency, procedural efficiency, and flexibility." *Id*.

Finally, the Commission adopted "American National Standard for Methods of Measurement of Radio-Noise Emissions from Low-Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz" (ANSI C63.4a-2017) as "an electromagnetic compatibility measurement standard for unintentional radiators." *Order*, ¶ 32 (JA 13). In doing so, the agency affirmed its tentative conclusion that its prior standard "continues to sufficiently address current needs," but that in some cases the modifications made by the new standard "may be necessary to accommodate testing of larger devices." *Id*. It therefore "retain[ed] the existing standards" and "adopt[ed] the modified standard" in order to "provide two options for an electromagnetic compatibility measurement standard for unintentional radiators to accommodate the improvements where they are most needed and retain the status quo for testing that would not benefit from the updates." *Id*.

A summary of the *Order* was published in the Federal Register on September 29, 2023. 88 Fed. Reg. 67108 (Sept. 29, 2023). The Federal Register summary of the *Order* explained that copies of American National Standards Institute standards could be purchased from the Institute of Electrical and Electronic Engineers and the ISO/IEC standard could be purchased from the International Organization for Standardization, 88 Fed. Reg. at 67111. *See* 47 C.F.R. § 2.910. It further explained that interested

parties could inspect a copy of each of the standards at the Commission's headquarters. 88 Fed. Reg. at 67111.

## STANDARD OF REVIEW

The petitioners bear a heavy burden to establish that the *Order* is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Under this 'highly deferential' standard of review, the court presumes the validity of agency action…and must affirm unless the Commission failed to consider relevant factors or made a clear error in judgment." *Cellco P'ship v. FCC*, 357 F.3d 88, 93-94 (D.C. Cir. 2004); *see also NTCH, Inc. v. FCC*, 841 F.3d 497, 502 (D.C. Cir. 2016).

## SUMMARY OF ARGUMENT

In the rulemaking below, the Commission followed its longstanding practice of incorporating by reference technical standards developed by private standards-setting organizations. The standards, which were incorporated in the rules for the Commission's equipment authorization program, specify the criteria for accrediting laboratories that test devices for equipment certifications and the tests and measurements that laboratories use to certify that devices comply with the Commission's technical rules for radiofrequency-emitting devices.

The petitioners contend that the Commission violated the notice-and-comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b)(3), and the reasonable availability requirement imposed by 5 U.S.C. § 552(a)(1), because it did not include the text of the standards with the proposed and final rules published in the Federal Register. The petitioners lack standing to challenge the *Order*, however, and their substantive challenges lack merit.

1. The petitioners lack standing to challenge the *Order*. Despite the requirements of this Court's rules, *see* D.C. Cir. R. 28(a)(7), the petitioners' initial brief does not address their standing. And even read generously, the petitioners' brief does not identify any injury-in-fact that would confer standing. The object of the standards incorporated by the Commission are laboratories that test devices for FCC equipment authorizations. The petitioners are not laboratories. They are self-described distributors of technical standards, and they only claim an injury to the public interest in the failure to make those standards available for free to the general public. A procedural challenge still requires a petitioner to have a stake in the rulemaking, and because the petitioners have not demonstrated one, they lack standing to challenge the *Order*.

2. In any event, the Commission complied with the notice-and-comment requirements of the Administrative Procedure Act, which permit an agency to publish "the terms or the substance of [a] proposed rule" in a notice of proposed rulemaking. 5 U.S.C. § 553(b)(3). In the *NPRM*, the Commission identified the standards that it proposed to incorporate in its rules and how interested parties could obtain the standards.

The Commission also ensured that the standards were "reasonably available to class of persons affected thereby," 5 U.S.C. § 552(a)(1), both during the rulemaking and in adopting the final rule. No party that submitted substantive comments on the rules identified any impediments to accessing the standards. While the petitioners contend that "reasonably available" requires free, unrestricted access to the standards, their interpretation of that phrase is contrary to the text of section 552(a)(1) and controlling federal regulations and guidance.

## ARGUMENT

## I.     THE PETITIONERS LACK STANDING

Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies between proper litigants." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996) (en banc). To establish standing under Article III, the petitioners "must have suffered or be imminently

threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark, Int'l, Inc. v. Static Control Components*, *Inc.*, 572 U.S. 118, 125 (2014); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The party invoking federal jurisdiction "bears the burden of establishing" standing. *Defenders of Wildlife*, 504 U.S. at 561. To meet that burden, a petitioner must "show a substantial probability that it has been injured, that the defendant caused the injury, and that the court could redress that injury." *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (cleaned up). "Absent good cause shown, a petitioner whose standing is not readily apparent must show that it has standing in its opening brief. A petitioner may carry this burden of production by citing any record evidence relevant to its claim of standing and, if necessary, appending to its filing additional affidavits or other evidence sufficient to support its claim." *State of Ohio v. EPA*, 98 F.4th 288, 300 (D.C. Cir. 2024) (cleaned up).

This Court has codified that requirement in Local Rule 28(a)(7), which provides: "In cases involving direct review...of administrative actions the brief of appellant or petitioner must set forth the basis for the claim of standing" in a "section[] entitled 'Standing,'" which "must follow the

summary of argument and immediately precede the argument." D.C. Cir. R. 28(a)(7). The Court's February 16, 2024, Order establishing the briefing schedule in this case reminded the petitioners of their Rule 28(a)(7) obligation to demonstrate standing.

The petitioners' opening brief, however, fails to make any argument, let alone produce or point to any evidence, that they have standing to challenge the *Order*. That failure to comply with this Court's rules should bar them from repairing that omission in their reply brief. *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 613-16 (D.C. Cir. 2019).

In any event, nothing in the petitioners' description of themselves suggests that they have a concrete interest in the FCC rules adopted in the *Order*. As far as their brief discloses, the petitioners have a general interest in sharing technical information with the public: Public Resource "provides a comprehensive repository of standards incorporated into law that enables interested persons to search across all those standards without a charge"; "iFixit provides instructions to individuals and supports a community of users dedicated to fixing electronic devices that must conform to [ANSI C63.10-2020]"; and "Make Community LLC represents a community of tens of thousands of individuals who wish to create new and innovative devices from

scratch that must conform with these binding legal regulations." Pet Br., 27-28.

That interest has no connection to the substance of this rulemaking. The rules proposed in the *NPRM* incorporate by reference technical standards that specify (1) the qualifications of bodies that accredit testing laboratories (ISO/IEC 17011:2017(E)); (2) the criteria for accrediting a testing laboratory (ISO/IEC 17025:2017(E)); (3) the general methods and procedures that laboratories use to test radiofrequency-emitting equipment (ANSI C63.25.1-2018 and ANSI C63.4a-2017); and (4) specific tests that laboratories perform to certify that unlicensed wireless devices comply with the Commission's radiofrequency emissions limits (ANSI C63.10-2020).

The petitioners are not testing laboratories, nor do they suggest that they need to comply with the rule's requirements for equipment testing facilities. And they have not, "by affidavit or other evidence," identified any individual with an interest affected by the regulations. *Sierra Club*, 292 F.3d at 899.

The petitioners do not describe themselves as membership organizations, but if they are, it is "not enough to aver that unidentified members have been injured." *Chamber of Commerce v. E.P.A.*, 642 F.3d 192, 199 (D.C. Cir. 2011). Though the petitioners claim that individuals who "fix[]

electronic devices" and "create new and innovative devices from scratch" must conform to at least one of the standards (ANSI C63.10-2020), that standard is incorporated by reference in a rule that governs testing laboratories. Pet. Br., 27-28. Persons who create radiofrequency devices must of course comply with the Commission's rules governing such devices, *see, e.g.*, 47 C.F.R. Pt. 15 (service rules for unlicensed wireless devices), but the petitioners do not point to any FCC rule that might apply to their activities that has incorporated by reference a privately-developed technical standard.

To be sure, the petitioners appear to have an interest in challenging the government-wide practice of incorporation by reference as inconsistent with administrative law requirements. But "an 'interest in the proper administration of the laws' is quintessentially 'nonconcrete.'" *Twin Rivers Paper*, 934 F.3d at 616 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (quotation marks omitted)).

At best, the petitioners' interest in this case is procedural. In the rulemaking, the petitioners clarified that they "[we]re not commenting…on the substantive merits of the proposed rule[s]," but instead were "ask[ing] the FCC to recognize that it has acted illegally and arbitrarily at this Notice of Proposed Rulemaking…stage in not making the details of these standards…available to [them] and other members of the public on a free and

unrestricted basis." PRO Comments, 4 (JA 64). Likewise here, they only

contend that the Commission violated the notice-and-comment and

incorporation-by-reference requirements of federal law by not publishing the

text of rules, including the incorporated standards, in the Federal Register.

However, "[t]he mere violation of a procedural requirement…does not

permit any and all persons to sue to enforce the requirement." *Florida

Audubon Society*, 94 F.3d at 664. "When plaintiffs challenge an action taken

without required procedural safeguards, they must establish the agency action

threatens their concrete interest." *Mendoza v. Perez*, 754 F.3d 1002, 1010

(D.C. Cir. 2014). Here, the petitioners have made no effort to establish that

"application of" the regulations adopted in the *Order* "will affect *them*" or

anyone that they represent. *Earth Island Inst*., 555 U.S. at 493 (emphasis in

original). The petition for review should be dismissed for lack of standing.

## II.   THE COMMISSION COMPLIED WITH FEDERAL LAW AT ALL STAGES OF THE RULEMAKING

Even if the petitioners could show a concrete interest in the

Commission's rules under review, their claims would fail on the merits—the

agency provided sufficient notice of its intent to incorporate new and updated

technical standards in its rules, and the standards were reasonably available to

the persons affected, both when the rules were proposed and adopted.

### A. The Commission Satisfied The Administrative Procedure Act By Providing Notice Of The Substance Of Its Proposed Rules And The Issues Involved In The Rulemaking

The Administrative Procedure Act provides that "[g]eneral notice of proposed rule making shall be published in the Federal Register" and "shall include (1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to the legal authority under which the rule is proposed; [and] (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b).

In adopting the *Order* on review, the Commission satisfied these requirements. *Order*, ¶ 10, n.36 (JA 5). The *NPRM* included a table that summarized: (1) the four technical standards that the Commission proposed to incorporate in its rules; (2) the standards that they would replace; (3) the Commission rules that would be affected; and (4) the Commission's reasons for incorporating each standard. *NPRM*, ¶ 10 (JA 37), Appendix A (proposed rules) (JA 50-53). It also provided a lengthy discussion of the standards and solicited comment on the merits of incorporating them in the Commission's rules. *See id.*, ¶¶ 11-24 (JA 40-46).

By publishing the "substance of the proposed rule[s]" and "a description of the subjects and issues involved" in the rulemaking, 5 U.S.C. § 553(b)(3), the Commission provided the information needed for members

of the public to determine whether they had an interest in the rulemaking, and if so, whether they also needed to review any of the standards that the Commission proposed to incorporate in its rules. *Order*, ¶¶ 9, 10 & n.36 (JA 4-5).[11]

The petitioners contend that by requiring an agency to provide notice of "the terms or the substance of the proposed rule," 5 U.S.C. § 553(b)(3), the Administrative Procedure Act requires an agency to publish the exact text of a proposed rule, including any materials incorporated by reference. Pet. Br., 18-34. The petitioners' reading of the statute is belied by its terms. Section 553(b)(3) permits an agency to publish the "substance of the proposed rule or a description of the subjects and issues involved" in addition to "the terms…of the proposed rule." By using the disjunctive "or," Congress gave agencies three options: (1) to publish the "terms" of the proposed rule; (2) to publish the "substance" of the proposed rule; or (3) to describe the "subjects and issues involved" in the proposal. *See United States v. Woods*, 571 U.S. 31, 45 (2013) (the "ordinary use" of "or" "is almost always disjunctive, that is, the words it connects are to be given separate meanings") (cleaned up).

---

[11] The summary of the *NPRM* published in the Federal Register also contained the substance of these explanations. 87 Fed. Reg. 15180.

The petitioners concede that section 553(b)(3) also allows an agency to publish the "substance of the proposed rule or a description of the subjects and issues involved" as an alternative to publishing the "terms" (text) of the proposed rules. Pet. Br., 19. They nonetheless contend that, "given the evolution of section 553 and what this Court has held is required to satisfy its purposes, publishing the 'substance' of these complex, highly technical rules, or a 'description of the subjects and issues involved,' would not satisfy what is required of all agencies under section 553(b)." *Id*. Despite the petitioners' invitation to do so, this Court cannot reinterpret a statute because it disagrees with what the statutory language expressly permits. *See U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 496 (D.C. Cir. 2004) ("The suggestion that Congress may have dropped a stitch[] is not enough to permit [this Court] to ignore the statutory text.") (cleaned up).

In *Center for Biological Diversity v. EPA*, 82 F.4th 959, 963-965 (10th Cir. 2023), the Court of Appeals for the Tenth Circuit addressed a similar challenge to the Environmental Protection Agency's (EPA's) approval of Colorado's air quality control plan. The EPA had published a rulemaking notice stating that it intended to approve the Colorado plan (which included a permitting process that was codified in the state's regulations) without publishing the text of the state regulations in the *Federal Register* or the

rulemaking docket. 82 F.4th at 964. The petitioner (an environmental group) asserted that the EPA had thereby failed to comply with section 553(b)(3), because the state regulations were difficult to locate. *Id.* The Tenth Circuit rejected that argument, finding that by identifying the topic of the rulemaking (approval of the Colorado air quality control plan) and the relevant sections of the Colorado Code of Regulations, the EPA had satisfied section 553(b)(3). *Id.* at 965. The Tenth Circuit acknowledged that "the EPA could have provided the relevant state regulations without much difficulty," but it determined that "[section] 553(b) only requires the EPA to give general notice of a proposed rulemaking, and the EPA's notice here did just that." *Id.*

In addition, federal law provides that while agencies must publish final rules of general applicability in the Federal Register, "matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein." 5 U.S.C. § 552(a)(1). If agencies can provide sufficient notice of final, codified rules, which have the force and effect of law, using incorporation by reference, then incorporation by reference should likewise provide sufficient notice of

proposed rules, which might never become law, 5 U.S.C. § 553(b)(3). The utility of incorporation by reference is the same in both cases.[12]

The purpose of incorporation by reference is to reduce the volume of materials published in the Federal Register and the Code of Federal Regulations—both to avoid inflating those publications with material that can be found elsewhere and to reduce agencies' publication costs. 1 C.F.R. § 51.7(a)(3) (1982) ("A publication is eligible for incorporation by reference under 5 U.S.C. 552(a) if it…[s]ubstantially reduces the volume of material published in the Federal Register."). Requiring agencies to publish materials included in proposed rules (which can total hundreds of pages) will have the opposite effect. This rulemaking alone incorporated technical standards in the FCC's rules that total hundreds of pages, *see* Sealed Appendix, which might itself have occupied a substantial portion of a volume of the Federal

---

[12] The Office of the Federal Register has the same view. When the Office last updated the incorporation by reference regulations, it declined to require that incorporated materials "be more widely available at no cost during the comment period of a proposed rule" than after the materials are incorporated in a final rule. *OFR 2014 Rulemaking Notice*, 79 Fed. Reg. at 66270.

Register.[13] Indeed, under the petitioners' interpretation of section 553(b)(3), the same standard would presumably have to be published in the Federal Register (and also the Code of Federal Regulations) each time an agency incorporates that standard in its regulations, further swelling the volume, and diminishing the utility, of those resources.[14]

Perhaps recognizing this difficulty, the petitioners state that they "would, as a practical matter, be satisfied if the FCC posted the proposed rules on its website." Pet. Br., 19; *see id.*, 18. At the outset, there is a significant (and undecided) question of whether a federal agency's posting of copyrighted material on its website without restriction would constitute fair use. *Am. Soc'y for Testing and Materials v. Public.Resource.Org.*, 82 F.4th 1262, 1267 (2023) ("[f]air use analysis is highly fact-intensive"). But even absent copyright restrictions, this Court is not free to mandate Internet publication of rulemaking materials as an alternative to Federal Register

---

[13] For that reason, it is not even clear that the Office of the Federal Register would have accepted the Commission's request to publish the standards with the rulemaking notice, had the Commission asked. *See* 1 C.F.R. § 51.7(a)(2)(ii) ("A publication is eligible for incorporation by reference…if it…[d]oes not detract from the usefulness of the Federal Register publication system.").

[14] This concern is not academic. We note that ISO/IEC 17025:2017 is also incorporated by reference in the EPA's regulations. *See* 40 C.F.R. § 770.99(g)(4).

publication. "Beyond the [Administrative Procedure Act]'s minimum requirements, courts lack authority to impose upon an agency its own notion of which procedures are best or most likely to further some vague, undefined public good." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 102 (2015) (cleaned up); *see Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978) (same).

In any event, this Court need not consider alternatives to Federal Register publication, because as we have shown, the Administrative Procedure Act accommodates incorporation by reference by permitting agencies to provide notice of the "substance" of proposed rules, or a description of the "subjects and issues involved," 5 U.S.C. § 553(b)(3). If an agency does either, then it satisfies its administrative law obligations. In this rulemaking, the Commission did both, and nothing more was required.

### B. The Standards The *Order* Proposed To And Did Incorporate In The FCC's Rules Were "Reasonably Available To The Class Of Persons Affected Thereby"

Moreover, throughout the rulemaking, the Commission followed the regulations and guidance governing incorporation by reference, 1 C.F.R. § 51.1 *et seq*. *See Order*, ¶¶ 8-11 (JA 4-6). The Commission sensibly determined that by complying with incorporation by reference procedures, it would more than satisfy the notice-and-comment requirements in section

553(b)(3) of the Administrative Procedure Act. *Order*, ¶¶ 9, 10 & n.36 (JA 4-5).

1. In conformance with controlling regulations, the rulemaking notice that the Commission sent to the Office of the Federal Register "[d]iscuss[ed]…the ways that" the standards the Commission proposed to incorporate in its rules "are reasonably available to interested parties" and "how [the Commission] worked to make those materials reasonably available," 1 C.F.R § 51.5(a)(1). It also "summarize[d]" the standards, *id.* § 51.5(a)(2). *See* 87 Fed. Reg. 15180, 15182-86. To make the standards "reasonably available," the Commission's staff encouraged the American National Standards Institute and the International Organization for Standards to provide "read-only" access to the standards, and the staff confirmed that two of the standards (ISO/IEC 17025:2017(E) and ISO/IEC 17011:2017) were available in the American National Standards Institute's online reading room. *Order*, ¶ 9 & n.30 (JA 4-5). *See* Admin. Conf. of the United States Recommendation 2011-5, 3, 77 Fed. Reg. 2257 (Jan. 17, 2012) (ACUS Recommendation 2011-5); OMB Circular A-119 (2016), 6, 21. Commission staff also confirmed that each standard was available for purchase prior to Federal Register publication of the *NPRM*. *Order*, ¶ 9 (JA 4-5). And, abstracts of the standards were widely available for free on the Internet. *Id.*,

¶ 10 (JA 5). *See* OMB Circular A-119 (2016), 21 (identifying a "summary that explains the content of the standard" as a factor in determining whether a standard is "reasonably available"). Finally, the Commission made the standards available for public inspection at its headquarters in Washington, D.C. *Order*, ¶ 10 (JA 5).

The petitioners appear to concede that materials may be incorporated by reference in proposed as well as final rules as long as they are "reasonably available to the class of persons affected thereby," 5 U.S.C. § 552(a)(1). Pet. Br., 24. But they interpret "reasonably available" to require "access" that "is easy and free, or equivalent to publication on [the FCC's] website or in the Federal Register." *Id.*, 22-23.

2. The petitioners' expansive reading of "reasonably available to the class of persons affected thereby" is not supported by the statutory text.

First, section 552(a)(1) does not define "reasonably available." "When terms used in a statute are undefined," this Court "give[s] them their ordinary meaning." *United States v. Palmer*, 854 F.3d 39, 47 (D.C. Cir. 2017). The ordinary meaning of "reasonable," is "not extreme or excessive," or "moderate" and "fair." Merriam Webster Dictionary, available at https://www.merriam-webster.com/dictionary/reasonable; *see also Reasonable*, Black's Law Dictionary 1518 (11th Ed. 2019) (defining

"reasonable" as "[f]air, proper, or moderate under the circumstances; sensible."). Because "available" is qualified by "reasonably," the term "reasonably available" in section 552(a)(1) requires something less than unrestricted, free access to incorporated materials. *See Order*, ¶ 9 (JA 4-5).

Second, if Congress had intended for incorporated materials to be equally available to everyone, it would not have qualified the term "reasonably available" by referring to "the class of persons affected thereby." 5 U.S.C. § 552(a)(1). The standards incorporated in federal regulations are often highly technical, and the class of persons that must conform to them may be much smaller than the general public. Congress therefore sensibly limited the requirement that materials be reasonably available to the persons who would be affected by their incorporation. As we have noted in our discussion of standing, *see* Pt. I above, the petitioners have not identified any interest of theirs affected by the FCC's rules governing testing laboratories; thus, they are not within "the class of persons affected thereby," and the

standards need not have been made "reasonably available" to them in order to have been incorporated in the FCC's rules.[15]

Third, the petitioners' interpretation of "reasonably available to the class of persons affected thereby" violates the canon against surplusage. If that phrase means unqualified access for everyone, then the words "reasonably" and "the class of persons affected thereby" are superfluous. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (cleaned up).

Lastly, the statute does not require the same "reasonably available" access to incorporated materials in every rulemaking. The Office of the Federal Register has specified that "'reasonably available'" in section 552(a)(1) is to be interpreted "in a flexible, case-by-case manner that takes specific situations into consideration." Nat'l Archives Off. of the Fed. Reg., Code of Fed. Regul. Incorporation by Reference, June 2023 Edition, 8 (*OFR IBR Handbook*). *See OFR 2014 Rulemaking Notice*, 79 Fed. Reg. at 66269

---

[15] The Office of the Federal Register has emphasized that "agencies maintain the flexibility to determine who is within the class of persons affected by a regulation or regulatory program on a case-by-case basis to respond to specific situations." *OFR 2014 Rulemaking Notice*, 79 Fed. Reg. at 66269.

("agencies maintain the flexibility to determine who is within the class of persons affected by a regulation or regulatory program on a case-by-case basis to respond to specific situations."). The standards were "reasonably available to the class of persons affected" in this rulemaking—laboratories and laboratory accrediting bodies. *See Order*, ¶ 10 (JA 5).

3. Authorities on incorporation by reference have declined to adopt the petitioners' expansive interpretation of "reasonably available."

In 2012, Public.Resource.Org and others petitioned the Office of the Federal Register to amend its regulations to require free, online access to all material incorporated in the Code of Federal Regulations. 77 Fed. Reg. 11414 (Feb. 27, 2012). The Office of the Federal Register declined that request, finding that it "go[es] beyond [its] statutory authority" and "would compromise the ability of regulators to rely on voluntary consensus standards, possibly requiring them to create their own standards, which is contrary to the NTTAA and the OMB Circular A-119." *OFR 2014 Rulemaking Notice*, 79 Fed. Reg. at 66268.

In 2012, Public.Resource.Org also told the Office of Management and Budget that materials incorporated in federal regulations should be "widely

available to the public, without charge."[16] When it updated its incorporation

by reference guidelines in 2016, however, the Office of Management and

Budget refused that request and deferred to the Office of the Federal

Register's recent interpretation of "reasonably available," 79 Fed. Reg.

66267. OMB Circular A-119 (2016), 6.

Similarly, the Administrative Conference of the United States has

"encourage[d]" federal agencies "to take…steps to promote the availability of

incorporated standards," short of recommending that agencies provide free,

online access to them. For example, it recommended that agencies ask

standards owners to provide "read-only" access to their standards on the

agency's or the standards owner's website. ACUS Recommendation 2011-5,

3. In doing so, the Conference observed that many standards incorporated in

federal regulations are copyrighted, and that the National Science and

Technology Council had determined that "reasonable" access to incorporated

standards "may include monetary compensation where appropriate." *Id.*

The Commission in the rulemaking reasonably conformed to guidance

from these authorities, all of whom have determined that "reasonably

---

[16] Letter from David Halperin and Carl Malamud, Public.Resource.Org, to
Cass R. Sunstein, Office of Management and Budget, April 11, 2012, 1,
available at https://www.regulations.gov/comment/NARA-12-0002-0109.

available to the class of persons affected thereby" does not require an agency to make "the text of proposed rules available and usable, at no more cost than viewing them on the agency's website, or obtaining a copy of the Federal Register." Pet. Br., 23.

4. The standards were also "reasonably available" to the petitioners at all times during the rulemaking.

To start, materials incorporated in federal regulations do not have to be available for free. Pet. Br., 21. Multiple authorities have determined that a copyrighted technical standard can be "reasonably available" even if access to it requires the payment of money. *Order*, ¶ 10 (JA 5). The Office of Management and Budget, for example, has advised agencies to "consider…the cost to regulated and other interested parties to access a copy of the material, including" their "ability to bear the costs of accessing such materials in a particular context." OMB Circular A-119 (2016), 21; *see also* ACUS Recommendation 2011-5, 3 (noting that reasonable access to technical standards "may include monetary compensation"). In this rulemaking, the "regulated" and "interested parties" that must conform to the standards (laboratories and accrediting bodies) either already owned the standards or could afford to purchase them.

Authorities on incorporation by reference have also determined that technical standards incorporated in federal regulations can be reasonably available if they are provided in a "read-only" format. *See* ACUS Recommendation 2011-5, 3; OMB Circular A-119 (2016), 21 (identifying free, read-only access to a copyrighted technical standard as a factor in determining whether the standard is "reasonably available").

The petitioners have not established that read-only access denied them reasonable access to the standards in this rulemaking. To start, the petitioners have not explained why they needed to copy or print the standards in order to comment meaningfully on the Commission's proposal. The petitioners complain that they could not "copy[] portions of the proposed rules or include[] them in their comments." Pet. Br., 21. But it is entirely unclear why targeted quotation of the standards for purposes of responding to the *NPRM* would not be a fair use. Indeed, we note that one commenter (Cisco Systems, Inc.) quoted a standard in its comments without objection from any standards organization.

Nor have the petitioners shown that it would not have been possible to comment on the utility or appropriateness of the standards without directly quoting from them. The *NPRM* solicited comment on the suitability of incorporating the standards in the Commission's rules. *NPRM*, ¶¶ 11-24 (JA

40-46). As the petitioners' brief illustrates, the *NPRM* only asked commenters to "cite any rule sections for which" the new or updated "standard may be problematic" or "cite" "portions of" the standards that should not be incorporated. Pet. Br., 8-9, 21-22. There was no need for any commenter to copy large sections of the text of the standards in its comment to respond to the questions posed by the *NPRM*, and none did.

Nor have the petitioners explained why they needed a printed copy of the standards to "analyze the standards' provisions or prepare comments." Pet. Br., 12. The standards are as "available" on a screen as they would be on paper. And given that the standards are hundreds of pages long, *see* Sealed Appendix, it is unclear that printing them out would provide any material advantage over reviewing them on a computer.

The Commission recognized that there were "limitations" on each method of accessing the standards "(*e.g.*, cost, travel for in-person inspection, limitations on how the materials may be downloaded, shared, or otherwise used)." *Order*, ¶ 11 (JA 5-6).[17] But it reasonably concluded that "none of

---

[17] To the extent amici for the petitioners raise arguments, not presented to the Commission, that the incorporation by reference violated other statutes, those arguments are not properly before the Court. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1148, n.6 (2015) ("Th[is] court will not entertain an argument made for the first time on appeal by an amicus.").

those limitations" "prevent[ed] interested parties from accessing and using the standards" in the rulemaking. *Id*. Indeed, the Commission noted, "interested persons" and "the class of persons affected" by the regulations participated in the rulemaking using the methods available. *Id.*, ¶ 10 (JA 5).

For these reasons, the cases discussed by the petitioners are distinguishable. In *Portland Cement Association v. Ruckelshaus*, 486 F.2d 375, 392 (D.C. Cir. 1973) and *American Radio Relay League v. FCC*, 524 F.3d 227, 240 (D.C. Cir. 2008), this Court determined that the petitioners had been denied an opportunity to comment on proposed rules because material that the agency relied on was not disclosed or made available at all by the agency during the rulemaking. Here, by contrast, the *NPRM* identified the standards that the Commission proposed to incorporate in its rules, described the standards, and explained how interested parties could access the standards, which were reasonably available.[18] Though the standards might not have been as accessible as the petitioners would have preferred, the Commission received comments addressing the merits of incorporating the

_____

[18] Moreover, the petitioners have not shown an interest in the substance of the rules, *see* p.18, 27-30, above, and they have not stated any intent to say something "useful" about the rules, given the chance. *Am. Radio Relay League*, 524 F.3d at 237 (This Court "will not set aside a rule absent a showing by the petitioners that they suffered prejudice from the agency's failure to provide an opportunity for public comment."); 5 U.S.C. § 706.

standards, underscoring that they were in fact readily accessible to interested parties. *Order*, ¶ 10 (JA 5).[19]

5. Finally, the standards continued to be "reasonably available to the class of persons affected thereby" after the Commission incorporated them in its final rules. 5 U.S.C. § 552(a)(1). Copies of the standards were available for public inspection at the Commission's office as well as the Office of the Federal Register in Washington, D.C.; the standards were available for purchase; and we have confirmed that the standards are available in American National Standards Institute's "Incorporated by Reference Portal," which provides free, online, read-only access to standards that have been incorporated by reference in the Code of Federal Regulations. *See Order*, ¶ 11 (JA 5-6); *see also* ibr.ansi.org. Thus, contrary to the petitioners' contention, Pet. Br., 35, the Commission was not required to publish the text of the incorporated standards with its final rules in the Federal Register.

## CONCLUSION

The Court should dismiss or otherwise deny the petition for review.

---

[19] The cases discussing the requirement that the rule adopted be a "logical outgrowth" of the one proposed law are similarly inapposite. *See* Pet. Br., 30-31. The standards that the Commission adopted in the *Order* were the same as those identified in the *NPRM*.

Respectfully submitted,

JONATHAN S. KANTER
ASSISTANT ATTORNEY GENERAL

P. MICHELE ELLISON
GENERAL COUNSEL

ROBERT B. NICHOLSON
ROBERT J. WIGGERS
ATTORNEYS

JACOB M. LEWIS
DEPUTY GENERAL COUNSEL

/s/ Maureen K. Flood

UNITED STATES
   DEPARTMENT OF JUSTICE
WASHINGTON, D.C. 20530

MAUREEN K. FLOOD
COUNSEL

FEDERAL COMMUNICATIONS
   COMMISSION
WASHINGTON, D.C. 20554
(202) 418-1740

May 13, 2024

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☒ this document contains <u>9,678</u> words, *or*

   ☐ this document uses a monospaced typeface and contains _ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

   ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

<u>*/s/ Maureen K. Flood*</u>

Maureen K. Flood
Counsel

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740

**CERTIFICATE OF FILING AND SERVICE**

I, Maureen K. Flood, hereby certify that on May 13, 2024, I filed the foregoing Brief for Respondents with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Maureen K. Flood*

Maureen K. Flood
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740

# STATUTORY AND REGULATORY
# APPENDIX

# Table of Contents

5 U.S.C. § 552 ..................................................................................................1

5 U.S.C. § 553 ..................................................................................................2

5 U.S.C. § 706 ..................................................................................................3

44 U.S.C. § 1502 ..............................................................................................4

47 U.S.C. § 302a ..............................................................................................5

1 C.F.R. § 51.3 .................................................................................................9

1 C.F.R. § 51.5 ...............................................................................................10

1 C.F.R. § 51.7 ...............................................................................................11

1 C.F.R. § 51.7 (1982) ...................................................................................12

47 C.F.R. § 2.901 ...........................................................................................13

47 C.F.R. § 2.906 ...........................................................................................14

47 C.F.R. § 2.907 ...........................................................................................15

47 C.F.R. § 2.910 ...........................................................................................16

47 C.F.R. § 2.947 ...........................................................................................18

47 C.F.R. § 2.948 ...........................................................................................20

47 C.F.R. § 2.949 ...........................................................................................24

# 5 U.S.C. § 552
## Public information; agency rules, opinions, orders, records, and proceedings

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public--

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

***

## 5 U.S.C. § 553
### Rule making

\*\*\*

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed;

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved; and

(4) the Internet address of a summary of not more than 100 words in length of the proposed rule, in plain language, that shall be posted on the Internet website under section 206(d) of the E-Government Act of 2002 (44 U.S.C. 3501 note) (commonly known as regulations.gov).

\*\*\*

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

# 5 U.S.C. § 706
## Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## 44 U.S.C. § 1502
Custody and printing of Federal documents, appointment of Director

The Archivist of the United States, acting through the Office of the Federal Register, is charged with the custody and, together with the Director of the Government Publishing Office, with the prompt and uniform printing and distribution of the documents required or authorized to be published by section 1505 of this title. There shall be at the head of the Office a director, appointed by, and who shall act under the general direction of, the Archivist of the United States in carrying out this chapter and the regulations prescribed under it.

**47 U.S.C. § 302a**
Devices which interfere with radio reception

(a) Regulations

The Commission may, consistent with the public interest, convenience, and necessity, make reasonable regulations (1) governing the interference potential of devices which in their operation are capable of emitting radio frequency energy by radiation, conduction, or other means in sufficient degree to cause harmful interference to radio communications; and (2) establishing minimum performance standards for home electronic equipment and systems to reduce their susceptibility to interference from radio frequency energy. Such regulations shall be applicable to the manufacture, import, sale, offer for sale, or shipment of such devices and home electronic equipment and systems, and to the use of such devices.

(b) Restrictions

No person shall manufacture, import, sell, offer for sale, or ship devices or home electronic equipment and systems, or use devices, which fail to comply with regulations promulgated pursuant to this section.

(c) Exceptions

The provisions of this section shall not be applicable to carriers transporting such devices or home electronic equipment and systems without trading in them, to devices or home electronic equipment and systems manufactured solely for export, to the manufacture, assembly, or installation of devices or home electronic equipment and systems for its own use by a public utility engaged in providing electric service, or to devices or home electronic equipment and systems for use by the Government of the United States or any agency thereof. Devices and home electronic equipment and systems for use by the Government of the United States or any agency thereof shall be developed, procured, or otherwise acquired, including offshore procurement, under United States Government criteria, standards, or specifications designed to achieve the objectives of reducing interference to radio reception and to home electronic equipment and systems, taking into account the unique needs of national defense and security.

(d) Cellular telecommunications receivers

(1) Within 180 days after October 28, 1992, the Commission shall prescribe and make effective regulations denying equipment authorization (under part 15 of

title 47, Code of Federal Regulations, or any other part of that title) for any scanning receiver that is capable of--

(A) receiving transmissions in the frequencies allocated to the domestic cellular radio telecommunications service,

(B) readily being altered by the user to receive transmissions in such frequencies, or

(C) being equipped with decoders that convert digital cellular transmissions to analog voice audio.

(2) Beginning 1 year after the effective date of the regulations adopted pursuant to paragraph (1), no receiver having the capabilities described in subparagraph (A), (B), or (C) of paragraph (1), as such capabilities are defined in such regulations, shall be manufactured in the United States or imported for use in the United States.

(e) Delegation of equipment testing and certification to private laboratories

The Commission may--

(1) authorize the use of private organizations for testing and certifying the compliance of devices or home electronic equipment and systems with regulations promulgated under this section;

(2) accept as prima facie evidence of such compliance the certification by any such organization; and

(3) establish such qualifications and standards as it deems appropriate for such private organizations, testing, and certification.

(f) State and local enforcement of FCC regulations on use of citizens band radio equipment

(1) Except as provided in paragraph (2), a State or local government may enact a statute or ordinance that prohibits a violation of the following regulations of the Commission under this section:

(A) A regulation that prohibits a use of citizens band radio equipment not authorized by the Commission.

(B) A regulation that prohibits the unauthorized operation of citizens band radio equipment on a frequency between 24 MHz and 35 MHz.

(2) A station that is licensed by the Commission pursuant to section 301 of this title in any radio service for the operation at issue shall not be subject to action by a State or local government under this subsection. A State or local government statute or ordinance enacted for purposes of this subsection shall identify the exemption available under this paragraph.

(3) The Commission shall, to the extent practicable, provide technical guidance to State and local governments regarding the detection and determination of violations of the regulations specified in paragraph (1).

(4)(A) In addition to any other remedy authorized by law, a person affected by the decision of a State or local government agency enforcing a statute or ordinance under paragraph (1) may submit to the Commission an appeal of the decision on the grounds that the State or local government, as the case may be, enacted a statute or ordinance outside the authority provided in this subsection.

   (B) A person shall submit an appeal on a decision of a State or local government agency to the Commission under this paragraph, if at all, not later than 30 days after the date on which the decision by the State or local government agency becomes final, but prior to seeking judicial review of such decision.

   (C) The Commission shall make a determination on an appeal submitted under subparagraph (B) not later than 180 days after its submittal.

   (D) If the Commission determines under subparagraph (C) that a State or local government agency has acted outside its authority in enforcing a statute or ordinance, the Commission shall preempt the decision enforcing the statute or ordinance.

(5) The enforcement of statute or ordinance that prohibits a violation of a regulation by a State or local government under paragraph (1) in a particular case shall not preclude the Commission from enforcing the regulation in that case concurrently.

(6) Nothing in this subsection shall be construed to diminish or otherwise affect the jurisdiction of the Commission under this section over devices capable of interfering with radio communications.

(7) The enforcement of a statute or ordinance by a State or local government under paragraph (1) with regard to citizens band radio equipment on board a

"commercial motor vehicle", as defined in section 31101 of Title 49, shall require probable cause to find that the commercial motor vehicle or the individual operating the vehicle is in violation of the regulations described in paragraph (1).

# 1 C.F.R. § 51.3
### When will the Director approve a publication?

(a)(1) The Director will informally approve the proposed incorporation by reference of a publication when the preamble of a proposed rule meets the requirements of this part (See § 51.5(a)).

(2) If the preamble of a proposed rule does not meet the requirements of this part, the Director will return the document to the agency (See 1 CFR 2.4).

(b) The Director will formally approve the incorporation by reference of a publication in a final rule when the following requirements are met:

(1) The publication is eligible for incorporation by reference (See § 51.7).

(2) The preamble meets the requirements of this part (See § 51.5(b)(2)).

(3) The language of incorporation meets the requirements of this part (See § 51.9).

(4) The publication is on file with the Office of the Federal Register.

(5) The Director has received a written request from the agency to approve the incorporation by reference of the publication.

(c) The Director will notify the agency of the approval or disapproval of an incorporation by reference in a final rule within 20 working days after the agency has met all the requirements for requesting approvals (See § 51.5).

# 1 C.F.R. § 51.5
## How does an agency request approval?

(a) For a proposed rule, the agency does not request formal approval but must:

(1) Discuss, in the preamble of the proposed rule, the ways that the materials it proposes to incorporate by reference are reasonably available to interested parties or how it worked to make those materials reasonably available to interested parties; and

(2) Summarize, in the preamble of the proposed rule, the material it proposes to incorporate by reference.

(b) For a final rule, the agency must request formal approval. The formal request package must:

(1) Send a letter that contains a written request for approval at least 20 working days before the agency intends to submit the final rule document for publication;

(2) Discuss, in the preamble of the final rule, the ways that the materials it incorporates by reference are reasonably available to interested parties and how interested parties can obtain the materials;

(3) Summarize, in the preamble of the final rule, the material it incorporates by reference;

(4) Send a copy of the final rule document that uses the proper language of incorporation with the written request (See § 51.9); and

(5) Ensure that a copy of the incorporated material is on file at the Office of the Federal Register.

(c) Agencies may consult with the Office of the Federal Register at any time with respect to the requirements of this part.

## 47 C.F.R. § 51.7
### What publications are eligible?

(a) A publication is eligible for incorporation by reference under 5 U.S.C. 552(a) if it—

(1) Conforms to the policy stated in § 51.1;

(2)(i) Is published data, criteria, standards, specifications, techniques, illustrations, or similar material; and

(ii) Does not detract from the usefulness of the Federal Register publication system; and

(3) Is reasonably available to and usable by the class of persons affected. In determining whether a publication is usable, the Director will consider—

(i) The completeness and ease of handling of the publication; and

(ii) Whether it is bound, numbered, and organized, as applicable.

(b) The Director will assume that a publication produced by the same agency that is seeking its approval is inappropriate for incorporation by reference. A publication produced by the agency may be approved, if, in the judgment of the Director, it meets the requirements of paragraph (a) and possesses other unique or highly unusual qualities. A publication may be approved if it cannot be printed using the Federal Register/Code of Federal Regulations printing system.

(c) The following materials are not appropriate for incorporation by reference:

(1) Material published previously in the Federal Register.

(2) Material published in the United States Code.

time with respect to the requirements of this part.

## §51.7 What publications are eligible?

(a) A publication is eligible for incorporation by reference under 5 U.S.C. 552(a) if it—

(1) Conforms to the policy stated in § 51.1;

(2) Is published data, criteria, standards, specifications, techniques, illustrations, or similar material;

(3) Substantially reduces the volume of material published in the FEDERAL REGISTER; and

(4) Is reasonably available to and usable by the class of persons affected by the publication. In determining whether a publication is usable, the Director will consider—

(i) The completeness and ease of handling of the publication; and

(ii) Whether it is bound, numbered, and organized.

(b) The Director will assume that a publication produced by the same agency that is seeking its approval is inappropriate for incorporation by reference. A publication produced by the agency may be approved, if, in the judgment of the Director, it meets the requirements of paragraph (a) and possesses other unique or highly unusual qualities. A publication may be approved if it cannot be printed using the FEDERAL REGISTER/Code of Federal Regulations printing system.

(c) The following materials are not appropriate for incorporation by reference:

(1) Material published previously in the FEDERAL REGISTER.

(2) Material published in the *United States Code.*

## §51.9 What is the proper language of incorporation?

(a) The language incorporating a publication by reference shall be as precise and complete as possible and shall make it clear that the incorporation by reference is intended and completed by the final rule document in which it appears.

(b) The language incorporating a publication by reference is precise and complete if it—

(1) Uses the words "incorporated by reference;"

(2) States the title, date, edition, author, publisher, and identification number of the publication;

(3) Informs the user that the incorporated publication is a requirement;

(4) Makes an official showing that the publication is in fact available by stating where and how copies may be examined and readily obtained with maximum convenience to the user; and

(5) Refers to 5 U.S.C. 552(a).

(c) If the Director approves a publication for incorporation by reference, the agency must—

(1) Include the following under the DATES caption of the preamble to the final rule document (See 1 CFR 18.12 *Preamble requirements):*

The incorporation by reference of certain publications listed in the regulations is approved by the Director of the Federal Register as of ———.

(2) Includes the term "incorporation by reference" in the list of index terms (See 1 CFR 18.20 *Identification of subjects in agency regulations).*

## §51.11 How does an agency change or remove an approved incorporation?

(a) An agency that seeks approval for a change to a publication that is approved for incorporation by reference must—

(1) Publish notice of the change in the FEDERAL REGISTER and amend the Code of Federal Regulations;

(2) Ensure that a copy of the amendment or revision is on file at the Office of the Federal Register; and

(3) Notify the Director of the Federal Register in writing that the change is being made.

(b) If a regulation containing an incorporation by reference fails to become effective or is removed from the Code of Federal Regulations, the agency must notify the Director of the Federal Register in writing of that fact within 5 working days of the occurrence.

**47 C.F.R. § 2.901**
Basis and purpose.

(a) In order to carry out its responsibilities under the Communications Act and the various treaties and international regulations, and in order to promote efficient use of the radio spectrum, the Commission has developed technical standards and other requirements for radio frequency equipment and parts or components thereof. The technical standards applicable to individual types of equipment are found in that part of the rules governing the service wherein the equipment is to be operated. In addition to the technical standards provided, the rules governing the service may require that such equipment be authorized under Supplier's Declaration of Conformity or receive a grant of certification from a Telecommunication Certification Body.

(b) Sections 2.906 through 2.1077 describe the procedure for a Supplier's Declaration of Conformity and the procedures to be followed in obtaining certification and the conditions attendant to such a grant.

**47 C.F.R § 2.906**
Supplier's Declaration of Conformity.

(a) Supplier's Declaration of Conformity (SDoC) is a procedure where the responsible party, as defined in § 2.909, makes measurements or completes other procedures found acceptable to the Commission to ensure that the equipment complies with the appropriate technical standards and other applicable requirements. Submittal to the Commission of a sample unit or representative data demonstrating compliance is not required unless specifically requested pursuant to § 2.945.

(b) Supplier's Declaration of Conformity is applicable to all items subsequently marketed by the manufacturer, importer, or the responsible party that are identical, as defined in § 2.908, to the sample tested and found acceptable by the manufacturer.

(c) The responsible party may, if it desires, apply for Certification of a device subject to the Supplier's Declaration of Conformity. In such cases, all rules governing certification will apply to that device.

(d) Notwithstanding other parts of this section, equipment otherwise subject to the Supplier's Declaration of Conformity process that is produced by any entity identified on the Covered List, established pursuant to § 1.50002 of this chapter, as producing covered communications equipment is prohibited from obtaining equipment authorization through that process. The rules governing certification apply to authorization of such equipment.

# 47 C.F.R. § 2.907
## Certification.

(a) Certification is an equipment authorization approved by the Commission or issued by a Telecommunication Certification Body (TCB) and authorized under the authority of the Commission, based on representations and test data submitted by the applicant.

(b) Certification attaches to all units subsequently marketed by the grantee which are identical (see § 2.908) to the sample tested except for permissive changes or other variations authorized by the Commission pursuant to § 2.1043.

(c) Any equipment otherwise eligible for authorization pursuant to the Supplier's Declaration of Conformity, or exempt from equipment authorization, produced by any entity identified on the Covered List, established pursuant to § 1.50002 of this chapter, as producing covered communications equipment must obtain equipment authorization through the certification process.

**47 C.F.R. § 2.910**
Incorporation by reference.

Certain material is incorporated by reference into this part with the approval of the Director of the Federal Register under 5 U.S.C. 552(a) and 1 CFR part 51. To enforce any edition other than that specified in this section, the Federal Communications Commission (FCC) must publish a document in the Federal Register and the material must be available to the public. All approved incorporation by reference (IBR) material is available for inspection at the FCC and at the National Archives and Records Administration (NARA). Contact the FCC at the address indicated in 47 CFR 0.401(a), phone: (202) 418–0270. For information on the availability of this material at NARA, visit www.archives.gov/federal-register/cfr/ibr-locations.html or email fr.inspection@nara.gov. The material may be obtained from the following source(s):

(a) International Electrotechnical Commission (IEC), IEC Central Office, 3, rue de Varembe, CH–1211 Geneva 20, Switzerland; email: inmail@iec.ch; website: www.iec.ch.

   (1) CISPR 16–1–4:2010–04, Specification for radio disturbance and immunity measuring apparatus and methods—Part 1–4: Radio disturbance and immunity measuring apparatus—Antennas and test sites for radiated disturbance measurements, Edition 3.0, 2010–04; IBR approved for § 2.948(d).

   (2) [Reserved]

(b) Institute of Electrical and Electronic Engineers (IEEE), 3916 Ranchero Drive, Ann Arbor, MI 48108; phone: (800) 678–4333; email: stds-info@ieee.org; website: www.ieee.org/.

   (1) ANSI C63.4–2014, American National Standard for Methods of Measurement of Radio–Noise Emissions from Low–Voltage Electrical and Electronic Equipment in the Range of 9 kHz to 40 GHz, ANSI–approved June 13, 2014, Sections 5.4.4 ("Radiated emission test facilities—Site validation") through 5.5 ("Radiated emission test facilities for frequencies above 1 GHz (1 GHz to 40 GHz)"), copyright 2014; IBR approved for § 2.948(d).

   (2) ANSI C63.4a–2017, American National Standard for Methods of Measurement of Radio–Noise Emissions from Low–Voltage Electrical and

Electronic Equipment in the Range of 9 kHz to 40 GHz, Amendment 1: Test Site Validation, ANSI–approved September 15, 2017; IBR approved for § 2.948(d).

(3) ANSI C63.25.1–2018, American National Standard Validation Methods for Radiated Emission Test Sites, 1 GHz to 18 GHz, ANSI–approved December 17, 2018; IBR approved for § 2.948(d).

(4) ANSI C63.26–2015, American National Standard of Procedures for Compliance Testing of Transmitters Used in Licensed Radio Services, ANSI–approved December 11, 2015; IBR approved for § 2.1041(b).

(c) International Organization for Standardization (ISO), Ch. de Blandonnet 8, CP 401, CH–1214 Vernier, Geneva, Switzerland; phone: + 41 22 749 01 11; fax: + 41 22 749 09 47; email: central@iso.org; website: www.iso.org.

(1) ISO/IEC 17011:2004(E), Conformity assessment—General requirements for accreditation bodies accrediting conformity assessment bodies, First Edition, 2004–09–01; IBR approved for §§ 2.948(e); 2.949(b); 2.960(c).

(2) ISO/IEC 17025:2005(E), General requirements for the competence of testing and calibration laboratories, Second Edition, 2005–05–15; IBR approved for §§ 2.948(e); 2.949(b); 2.950(a); 2.962(c) and (d).

(3) ISO/IEC 17025:2017(E), General requirements for the competence of testing and calibration laboratories, Third Edition, November 2017; IBR approved for §§ 2.948(e); 2.949(b); 2.950(a); 2.962(c) and (d).

(4) ISO/IEC 17065:2012(E), Conformity assessment—Requirements for bodies certifying products, processes and services, First Edition, 2012–09–15; IBR approved for §§ 2.960(b); 2.962(b), (c), (d), (f), and (g).

Note 1 to § 2.910: The standards listed in paragraphs (b) and (c) of this section are also available from the American National Standards Institute (ANSI), 25 West 43rd Street, 4th Floor, New York, NY 10036; phone (212) 642–4980; email info@ansi.org; website: https://webstore.ansi.org/.

## 47 C.F.R. § 2.947
### Measurement procedure.

(a) Test data must be measured in accordance with the following standards or measurement procedures:

(1) Those set forth in bulletins or reports prepared by the Commission's Office of Engineering and Technology. These will be issued as required, and specified in the particular part of the rules where applicable.

(2) Those acceptable to the Commission and published by national engineering societies such as the Electronic Industries Association, the Institute of Electrical and Electronic Engineers, Inc., and the American National Standards Institute.

(3) Any measurement procedure acceptable to the Commission may be used to prepare data demonstrating compliance with the requirements of this chapter. Advisory information regarding measurement procedures can be found in the Commission's Knowledge Database, which is available at www.fcc.gov/labhelp.

(b) Information submitted pursuant to paragraph (a) of this section shall completely identify the specific standard or measurement procedure used.

(c) In the case of equipment requiring measurement procedures not specified in the references set forth in paragraphs (a)(1) through (3) of this section, the applicant shall submit a detailed description of the measurement procedures actually used.

(d) A listing of the test equipment used shall be submitted.

(e) If deemed necessary, additional information may be required concerning the measurement procedures employed in obtaining the data submitted for equipment authorization purposes.

(f) A composite system is a system that incorporates different devices contained either in a single enclosure or in separate enclosures connected by wire or cable. If the individual devices in a composite system are subject to different technical standards, each such device must comply with its specific standards. In no event may the measured emissions of the composite system exceed the highest level permitted for an individual component. Testing for compliance with the different standards shall be performed with all of the devices in the system functioning. If the composite system incorporates more than one antenna or other radiating source and these radiating sources are designed to emit at the same time, measurements of

18

conducted and radiated emissions shall be performed with all radiating sources that are to be employed emitting.

(g) For each technical requirement in this chapter, the test report shall provide adequate test data to demonstrate compliance for the requirement, or in absence of test data, justification acceptable to the Commission as to why test data is not required.

**47 C.F.R. § 2.948**
Measurement facilities.

(a) Equipment authorized under the certification procedure shall be tested at a laboratory that is accredited in accordance with paragraph (e) of this section.

(b) A laboratory that makes measurements of equipment subject to an equipment authorization under the certification procedure or Supplier's Declaration of Conformity shall compile a description of the measurement facilities employed.

(1) The description of the measurement facilities shall contain the following information:

(i) Location of the test site.

(ii) Physical description of the test site accompanied by photographs that clearly show the details of the test site.

(iii) A drawing showing the dimensions of the site, physical layout of all supporting structures, and all structures within 5 times the distance between the measuring antenna and the device being measured.

(iv) Description of structures used to support the device being measured and the test instrumentation.

(v) List of measuring equipment used.

(vi) Information concerning the calibration of the measuring equipment, i.e., the date the equipment was last calibrated and how often the equipment is calibrated.

(vii) For a measurement facility that will be used for testing radiated emissions, a plot of site attenuation data taken pursuant to paragraph (d) of this section.

(2) The description of the measurement facilities shall be provided to a laboratory accreditation body upon request.

(3) The description of the measurement facilities shall be retained by the party responsible for authorization of the equipment and provided to the Commission upon request.

(i) The party responsible for authorization of the equipment may rely upon the description of the measurement facilities retained by an independent

laboratory that performed the tests. In this situation, the party responsible for authorization of the equipment is not required to retain a duplicate copy of the description of the measurement facilities.

(ii) No specific site calibration data is required for equipment that is authorized for compliance based on measurements performed at the installation site of the equipment. The description of the measurement facilities may be retained at the site at which the measurements were performed.

(c) The Commission will maintain a list of accredited laboratories that it has recognized. The Commission will make publicly available a list of those laboratories that have indicated a willingness to perform testing for the general public. Inclusion of a facility on the Commission's list does not constitute Commission endorsement of that facility. In order to be included on this list, the accrediting organization (or Designating Authority in the case of foreign laboratories) must submit the information listed below to the Commission's laboratory:

(1) Laboratory name, location of test site(s), mailing address and contact information;

(2) Name of accrediting organization;

(3) Scope of laboratory accreditation;

(4) Date of expiration of accreditation;

(5) Designation number;

(6) FCC Registration Number (FRN);

(7) A statement as to whether or not the laboratory performs testing on a contract basis;

(8) For laboratories outside the United States, the name of the mutual recognition agreement or arrangement under which the accreditation of the laboratory is recognized;

(9) Other information as requested by the Commission.

(d) When the measurement method used requires the testing of radiated emissions on a validated test site, the site attenuation must comply with either: the

requirements of ANSI C63.4a–2017 (incorporated by reference, see § 2.910) or the requirements of sections 5.4.4 through 5.5 of ANSI C63.4–2014 (incorporated by reference, see § 2.910).

(1) Measurement facilities used to make radiated emission measurements from 30 MHz to 1 GHz must comply with the site validation requirements in either ANSI C63.4a–2017 or ANSI C63.4–2014 (clause 5.4.4);

(2) Measurement facilities used to make radiated emission measurements from 1 GHz to 18 GHz must comply with the site validation requirement of ANSI C63.25.1–2018 (incorporated by reference, see § 2.910);

(3) Measurement facilities used to make radiated emission measurements from 18 GHz to 40 GHz must comply with the site validation requirement of ANSI C63.4–2014 (clause 5.5.1 a) 1)), such that the site validation criteria called out in CISPR 16–1–4:2010–04 (incorporated by reference, see § 2.910) is met.

(4) Test site revalidation must occur on an interval not to exceed three years.

(e) A laboratory that has been accredited with a scope covering the measurements required for the types of equipment that it will test shall be deemed competent to test and submit test data for equipment subject to certification. Such a laboratory shall be accredited by a Commission recognized accreditation organization based on the International Organization for Standardization/International Electrotechnical Commission International Standard ISO/IEC 17025, (incorporated by reference, see § 2.910). The organization accrediting the laboratory must be recognized by the Commission's Office of Engineering and Technology, as indicated in § 0.241 of this chapter, to perform such accreditation based on International Standard ISO/IEC 17011 (incorporated by reference, see § 2.910). The frequency for reassessment of the test facility and the information that is required to be filed or retained by the testing party shall comply with the requirements established by the accrediting organization, but shall occur on an interval not to exceed two years.

(f) The accreditation of a laboratory located outside of the United States, or its possessions, will be acceptable only under one of the following conditions:

(1) If the accredited laboratory has been designated by a foreign Designating Authority and recognized by the Commission under the terms of a government-to-government Mutual Recognition Agreement/Arrangement (MRA); or

(2) If the laboratory is located in a country that does not have an MRA with the United States, then it must be accredited by an organization recognized by the Commission under the provisions of § 2.949 for performing accreditations in the country where the laboratory is located.

**47 C.F.R. § 2.949**
Recognition of laboratory accreditation bodies.

(a) A party wishing to become a laboratory accreditation body recognized by OET must submit a written request to the Chief of OET requesting such recognition. OET will make a determination based on the information provided in support of the request for recognition.

(b) Applicants shall provide the following information as evidence of their credentials and qualifications to perform accreditation of laboratories that test equipment to Commission requirements, consistent with the requirements of § 2.948(e). OET may request additional information, or showings, as needed, to determine the applicant's credentials and qualifications.

(1) Successful completion of an ISO/IEC 17011 (incorporated by reference, see § 2.910) peer review, such as being a signatory to an accreditation agreement that is acceptable to the Commission.

(2) Experience with the accreditation of electromagnetic compatibility (EMC), radio and telecommunications testing laboratories to ISO/IEC 17025 (incorporated by reference, see § 2.910).

(3) Accreditation personnel/assessors with specific technical experience on the Commission equipment authorization rules and requirements.

(4) Procedures and policies developed for the accreditation of testing laboratories for FCC equipment authorization programs.